147   367
152    43
147   367
156   485
147   367
169  ³166
147        367
e 78 AD¹298

ELIZUR V. FOOTE, Respondent, *v.* THE METROPOLITAN ELE-
VATED RAILWAY COMPANY and THE MANHATTAN RAILWAY
COMPANY, Appellants.

1. ELEVATED RAILROADS — EASEMENTS IN STREET — ABANDONMENT.
The abandonment of the right of easements in a city street, appurtenant
to abutting property and encroached upon by an elevated railroad, may
be established by evidence of acts clearly indicating an intention on the
part of the abutting owner to abandon the right, followed by action
thereupon by the railroad company.

2. INTENTION TO ABANDON EASEMENTS. An intention on the part of
an abutting owner to abandon his right of easements in a street is not to be
inferred from the fact of his bringing an action at law against an ele-
vated street railroad company to recover temporary accrued damages
for its unlawful invasion of his right, followed by an agreement with a
proposed grantee of the abutting property, reserving all claims arisen
or to accrue by reason of the elevated road; and a declaration of such
intention, made by the original owner on receiving payment from the
railroad company in settlement of such action, subsequent to his parting
with the title to the premises affected and to its conveyance to a third
party by his grantee, will not retroact to the time of the commencement
of his action and so complete the act of extinguishment as of that date,
when he was owner of the premises. Such a state of facts does not
present a case for the application of the above rule as to abandonment
of easements.

3. EASEMENTS — RIGHT TO COMPENSATION. The pendency of an action
at law, brought by an original abutting owner to recover temporary
damages for the trespass upon his right of easements in a street by an
elevated railroad, and the existence of an agreement between him and
his grantee of the abutting property, reserving all claims arisen or to
accrue by reason of the elevated road, will not affect a subsequent grant of
the abutting property to a third party by such grantee before any lawful
acquisition of the easements by the railroad company; but such ease-
ments pass as appurtenant to the property, and such third party, on
becoming the owner thereof, is solely invested with the right of asking
to restrain the operation of the railroad and to recover compensation for
the easements; and if the railroad company thereafter makes a settle-
ment with and payment to the original owner for the easements, it does
so at its peril.

Mem. of decision below, 83 Hun, 610.

(Argued October 25, 1895; decided November 26, 1895.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 14, 1894, which affirmed a final judgment in favor of plaintiff entered upon a report of referees pursuant to an interlocutory judgment of Special Term which, among other provisions, directed a reference of the question of mesne damages.

This action was brought to restrain the operation and maintenance of defendant's elevated railroad in front of plaintiff's premises, and to recover the damages caused thereby.

The facts, so far as material, are stated in the opinion.

*Brainard Tolles* for appellants. The reservation of October 28 and December 11, 1884, together with the Lathrop suit, operated as an abandonment and extinguishment of the easements in question. (*Galway* v. *El. R. Co.*, 128 N. Y. 149; *Tallman* v. *El. R. Co.*, 121 N. Y. 123; *White Case*, 139 N. Y. 19; *Snell* v. *Leavitt*, 110 N. Y. 595; *Lattimer* v. *Livermore*, 72 N. Y. 174; *Mitchell* v. *El. R. Co.*, 134 N. Y. 14; *Lahr* v. *El. R. Co.*, 104 N. Y. 268.) Plaintiff was not a *bona fide* purchaser under the Recording Act, as to the easements in question, because he took with full notice of the pendency of the Lathrop action, and of all the rights and claims of both parties to that litigation and of the reservation of October 28 and December 11, 1884. (*Tuttle* v. *Jackson*, 6 Wend. 226; *Williamson* v. *Brown*, 15 N. Y. 354; *Mitchell* v. *El. R. Co.*, 134 N. Y. 14; *Le Neve* v. *Le Neve*, 2 White & Tudor's L. Cas. 188; *Grimstone* v. *Carter*, 3 Paige, 421, 437, 439; *Cordova* v. *Hood*, 17 Wall. 1; Jones on Mort. §§ 600, 601; 2 Sugden on Vendors, *1052; *Parker* v. *Jacot*, 8 Bosw. 174; 3 Washb. Real Est. 591; *Sheldon* v. *Cox*, 2 Edm. 228; *Newman* v. *Chapman*, 2 Rand. 100; *Plumb* v. *Fluitt*, 2 Anst. 432; Story's Eq. Juris. § 399; *Griffith* v. *Griffith*, 1 Hoffman, 153; *Chesterman* v. *Gardner*, 5 Johns. Ch. 33; *De Ruyter* v. *Trustees*, 2 Barb. Ch. 558; *Paul* v. *Connersville*, 51 Ind. 527; *Jackson* v. *Loser*, 4 Sandf. Ch. 381; *Jones* v. *McMarrin*, 68 Me. 334; *Simmons* v.

*Doran,* 142 U. S. 417; *Dunn* v. *Hornbeck,* 72 N. Y. 80; *Corning* v. *Troy,* 40 N. Y. 202; *Buck* v. *Paine,* 50 Miss. 648; *Carter* v. *Portland,* 4 Ark. 339; *Clark* v. *Plumstead,* 11 Ill. App. 57; *Werner* v. *Leitzinger,* 4 Mo. App. 106; *Bartolett* v. *Achey,* 38 Penn. St. 273; *Black* v. *Chicago,* 18 Wis. 208; *Harvey* v. *Smith,* 22 Beav. 299; *Tardy* v. *Morgan,* 3 McL. 358; *Scheuber* v. *Wheeler,* 15 S. W. Rep. 503; *Bradley* v. *Walker,* 44 N. Y. S. R. 213; *Tallmadge* v. *E. R. Bank,* 26 N. Y. 105; Gerard on Titles, 660; *Tuttle* v. *Jackson,* 6 Wend. 226; *Gouverneur* v. *Lynch,* 2 Paige, 300; *Davis* v. *Strathmore,* 16 Ves. 429, 430; *Hall* v. *Nelson,* 14 How. Pr. 32; *Sampson* v. *Ohmyer,* 22 Cal. 200; *Sharp* v. *Lumley,* 34 Cal. 612; *Ferrea* v. *Chabot,* 64 Cal. 564; *McGean* v. *El. R. Co.,* 133 N. Y. 14; *Bellamy* v. *Sabine,* 1 De G. & J. 580; *Garth* v. *Ward,* 2 Atk. 174; *Baird* v. *Corwin,* 17 Penn. St. 462; *Moss Case,* 27 Abb. [N. C.] 318; *Sedgwick* v. *Cleveland,* 7 Paige, 287; *Van Hook* v. *Throckmorton,* 8 Paige, 33; *Hodge* v. *Sloan,* 107 N. Y. 244.) The reservation at the time of the conveyance from Lathrop to Gillie & Walker was a valid reservation of the right to permanent damages for the taking of the easements. (*Kernochan* v. *El. R. R. Co.,* 128 N. Y. 559; *Galway* v. *El. R. Co.,* 128 N. Y. 149; *McGean* v. *El. R. Co.,* 133 N. Y. 13; *Uline* v. *N. Y. C. & H. R. R. R. Co.,* 101 N. Y. 98; *Pond* v. *El. R. Co.,* 112 N. Y. 186; *Mitchell* v. *El. R. Co.,* 134 N. Y. 11; *Van Allen* v. *N. Y. El. R. R. Co.,* 144 N. Y. 174; *Lahr* v. *El. R. Co.,* 104 N. Y. 268; *White* v. *M. R. Co.,* 139 N. Y. 19; *People* v. *O'Brien,* 111 N. Y. 1; *Henry* v. *Dubuque,* 2 Iowa, 288; *Hovey* v. *Elliott,* 118 N. Y. 136; *Tallman* v. *El. R. Co.,* 121 N. Y. 133; *Murray* v. *Ballou,* 1 Johns. Ch. 565; *Harrington* v. *Slade,* 22 Barb. 161; *Walden* v. *Bodley,* 9 How. [U. S.] 34; *Tilton* v. *Cofield,* 93 U. S. 163; *Seymour* v. *McKinstry,* 106 N. Y. 230; Story's Eq. Pl. § 156.) Even though the reservation in question were invalid, the plaintiff is estopped by his conduct from recovering the permanent damages in a court of equity. (Pom. Eq. Juris. §§ 802, 807, 809; *Welland*

47

v. *Hathaway*, 8 Wend. 483; *Irving* v. *Alley*, 79 N. Y. 540; *Van Allen* v. *N. Y. El. R. R. Co.*, 144 N. Y. 174.) The title to the easements taken by the defendants did not pass by the plaintiff's deed. (Elphinstone on Deeds, 189; *U. S.* v. *Appleton*, 1 Sumn. 492; *Parker* v. *Moore*, 118 Mass. 552; *Adams* v. *Conover*, 87 N. Y. 422.) The conveyance of the easements in question to the plaintiff was void for champerty. (Penal Code, § 129; *Webb* v. *Bindon*, 21 Wend. 99; *Jackson* v. *Andrews*, 7 Wend. 152; *Jackson* v. *Ketcham*, 8 Johns. 484; R. S. 2453, § 147; *Crary* v. *Goodman*, 22 N. Y. 170; *Sands* v. *Hughes*, 53 N. Y. 287; *Newman* v. *El. R. Co.*, 118 N. Y. 625; *Story* v. *El. R. R. Co.*, 90 N. Y. 122.)

*Leo C. Dessar* for respondent. The agreements of October 28 and December 11, 1884, between William G. Lathrop and Gillie & Walker in no way affect plaintiff's right of recovery in this action. These easements were appurtenant to and formed part of the premises conveyed, and are incapable of being separated from them. (*Kernochan* v. *El. R. R. Co.*, 130 N. Y. 651.)

GRAY, J. The plaintiff, owning property abutting on West 53d street, in the city of New York, recovered an interlocutory judgment against the defendants; which enjoined them from maintaining and operating their elevated railway in front of his premises, unless they acquired title to the street easements by condemnation proceedings. In proceedings following the decree, the mesne and fee damages were ascertained, and, upon this appeal from the interlocutory and final judgments in the action, the defendants make the point that there had been an abandonment and an extinguishment of the easements in the street, upon which plaintiff's property abutted, before the latter purchased the same. This abandonment of easements appurtenant to the land they claim to have been effected, as the result of certain agreements entered into between prior owners of the land and of a settlement made of an action at law brought against the defendants by one of

these owners.  This is an important point ; for if it is well founded in the facts a complete defense is made out.  As they base this claim to an extinguishment of the easements upon an intention to abandon them, as evidenced by some antecedent transactions, which was so effectuated, though at a time subsequent to the plaintiff's purchase, as to complete the act of extinguishment as of the earlier date, we must consider the facts somewhat carefully ; in order to see if they establish all that is claimed for them and justify the legal conclusion contended for.

The rule being that the abandonment of such an easement may be established by the evidence of acts clearly indicating an intention to abandon the right, is this a case for the application of the rule ?  In the *White Case*, (139 N. Y. 19), upon which the defendants rely, the question was as to the effect of an unconditional consent to the building of the elevated railroad, given by owners of land bounded on the street, and upon which the defendants had acted, by proceeding to construct their road, and we held that it must be regarded as an abandonment *pro tanto* of the easements in the street.  The decision in that case, as in the case of *Snell* v. *Levitt* (110 N. Y. 595), was in accord with a settled doctrine of the law that the land owner's right in an easement may be destroyed by his abandonment of it and that whether there has been an abandonment is a question of intention depending upon the facts of the particular case.  (See 2 Washburn on Real Property, \*83 ; Washburn on Easements, \*601, and *Corning* v. *Gould*, 16 Wend. 531.)

The peculiar features in the *White* and *Snell* cases, which have been referred to, were, in the one, an express authorization to build the elevated railroad and, in the other, an express relinquishment of an easement to conduct water ; upon both of which agreements the parties favorably affected thereby had acted.  We will not find in the facts of this case much resemblance to the features of either of the other cases. Lathrop, one of the predecessors in title of the plaintiff, commenced an action at law against the defendants to recover

from them $10,000 damages for the loss of rents and the injury to the value of his premises, occasioned by their trespass upon his property rights in the street. Subsequently, having contracted to sell the property affected to Gillie and Walker, they united in executing an agreement; wherein it was " mutually agreed between the parties that all right and claim and demand heretofore accrued or arisen, or which may hereafter arise or accrue, to either of the parties to this agreement against any and every corporations and corporation, person and persons, for or by reason of the erection and building and maintaining of the elevated railroad, * * * shall belong to and are hereby retained by and reserved and granted to William G. Lathrop, Jr., and his legal representatives and assigns, and are hereby excluded and excepted from any and every grant and conveyance of said premises, or any part thereof, with full liberty and power and authority to said Lathrop to sue for, collect, compromise, compound and receive to his own use, and release and discharge any and every such claim and demand now existing and accrued, or hereafter to arise and accrue, against any corporation or corporations, person or persons, for such elevated railroad and the using and running of the same." Thereafter, and as of the date when the deed of the premises was made, another agreement was executed at the foot of the other agreement, to the effect, that it was "excepted from the grant and conveyance of the land; * * * said grant being made subject to the conditions of the above agreement." These agreements were not recorded; nor did the deed mention them, or except any rights; but was in the usual form of a deed with full covenants and warranty, conveying with all the hereditaments and appurtenances, etc. A few months later, Gillie and Walker deeded the premises to the plaintiff. More than three years after the plaintiff's purchase, Lathrop settled with the defendants for a payment of $2,500; discontinued his action and delivered to the defendants a release from all claims by reason of the construction and operation of their railroad and which stated Lathrop's "intention

to release, etc., all such right, etc., in 53d street and the easements therein appurtenant to said premises, which, on the 11th day of December, 1884," (the date of his deed to Gillie and Walker), "were in the possession and occupation" of these defendants.

This present action was commenced by the plaintiff at a still subsequent date. Upon these facts the defendants argue that the agreement of Lathrop with Gillie and Walker evidenced the intention to abandon the street easements as between them, and that the subsequent payment to Lathrop in settlement of his action retroacted to the time of its commencement and so completed "the act of extinguishment as of that date." This argument, must, however, assume for the agreement a more comprehensive effect than either its language admits, or the law would concede to it, and it slights the grant to this plaintiff and regards him as a purchaser chargeable with knowledge of facts outside the record title, which bound him as to transactions to which he was not a party. Considering, in the first place, Lathrop's action, we find it to be one of law, for the recovery of damages from the defendants for their unlawful invasion of his rights of easement in the street and in such an action the recovery is confined to such temporary damages as have accrued to the commencement of the action; a rule which was carefully reviewed and re-asserted in the *Pond Case* (112 N. Y. 186). In that case, it was said by the present chief judge that "a recovery of judgment for damages for a trespass or the invasion of an easement does not operate to transfer the title of the property to the defendant, either before or after satisfaction, nor does it extinguish the easement." In contemplation of the law, Lathrop's action was the assertion of a claim for the damages theretofore suffered and future actions were maintainable to recover subsequent damages for the continued trespass until it ceased, or was converted into a rightful occupation, through compensation as the result of condemnation proceedings, or through payment of the value of the easements when ascertained and fixed by the court in its decree. What then was the effect of

the agreement between Lathrop and Gillie and Walker, except to reserve to him his rights and claims for the damages theretofore sustained through the defendants' trespass and, in addition, those which might be further recovered by his grantees, Gillie and Walker, for the continuing trespass during their ownership? Clearly nothing more. Having asserted his claims in his action, the agreement had obvious and only reference to such; with the added right to receive such further damages as Gillie and Walker, when owners, might be entitled to recover. It may possibly be that, as between Lathrop and his grantees, Gillie and Walker, if, as the result of some action or proceeding, the defendants had acquired the right to occupy the street, through the payment of compensation for the property rights therein of Gillie and Walker, the moneys would be deemed in equity to have been received for Lathrop. But that, if true, merely goes to the effect of their particular contractual relations. The contract was neither one which affected the land, nor one which charged a subsequent grantee of the land with notice of any rights of the defendants gained therein. It is not really disputed that the agreement was ineffectual to reserve the easements in the street. They were appurtenant to the abutting property; were incapable of being separated therefrom, and passed upon a sale thereof to the purchaser with the right to any remedy for any invasion thereof. (*Kernochan* v. *Elevated R. R. Co.*, 128 N. Y. 559; *Pegram* v. *Same*, 147 N. Y. 135.) When Lathrop conveyed to Gillie and Walker, these easements appurtenant to the land passed with the grant, undiminished by their cotemporaneous agreement; the operation of which, as before suggested, was to affect the ownership of Gillie and Walker with a possible equity in favor of Lathrop, as to any claim they might have against the defendants by reason of their appropriation of the appurtenant easements. Although they were their property by force of the grant of the land to which appurtenant, doubtless, their grantor, under the collateral agreement, might have required them to account to him for moneys received from the defendants as compensation for

their occupation of the street. But nothing of the kind occurred and when, in turn, Gillie and Walker conveyed the land to this plaintiff, the grant passed with it the appurtenant street easements. The pending action of Lathrop and the agreements of the preceding owners had no effect upon the grant and none upon the grantee. We had occasion, quite lately, in the *Pegram* case to consider the effect of a reservation in a conveyance, made pending a similar action to this, which was brought by the grantor to restrain the operation of the defendants' road. The reservation in the grant there was of such a nature that were the easements in question capable in law of assignment, it would have been effectual for that purpose. But the claim of the plaintiff in that case to be entitled, by virtue of the reservation in the grant, to the equitable relief demanded and the damages occasioned since the date of his conveyance of the property, was denied. We there regarded the person, who was the owner of the abutting property, as having the sole right to the street easements and, hence, was solely injured by their unlawful appropriation and was solely invested with the right to ask that the defendants' acts be restrained and that they be compelled to make compensation to him for the taking of his property, as a condition of their right to be there.

What was there to affect this plaintiff's ownership in the land and its appurtenant street easements, or to prevent him from bringing this action? He was not a party to any of the antecedent transactions between his predecessors in the title. Nothing of record gave him notice of such an agreement. Upon what inquiry was he put when he purchased the property? The presence of the elevated railroad in the street was not notice of anything to him. It was a trespasser, for whose unlawful acts the law afforded remedies available to the abutting owner. Suppose he had inquired of his grantors and had learned of their agreement with Lathrop, or of Lathrop's suit for damages, would he then have been chargeable with notice of anything which would preclude him from proceeding against the defendants as trespassers upon his easements?

Certainly not; for he would have learned of nothing which bound him, or which diminished his property rights under the grant to him. There had been no extinguishment of the easements. They existed and would exist, until properly appropriated and compensation made. The defendants had not acquired them, nor had they been abandoned. Lathrop's action was incompetent for any purpose, except to recover any temporary damages sustained by him. It is impossible to say that Lathrop's acts, when owner, indicated a clear intention to give up his street easements. We may assume that he would have consented to do so, if compensation was made; but that important condition was not met by the defendants' assent. The proper application of the rule would be, to work an extinguishment at law, that the acts of the party entitled to claim the servitude, or the easement, must be accompanied by the intention to extinguish and be followed by action upon it on the part of the party claiming adversely. The latter must close with the intent. It must be a joint intent of all the parties interested to get rid of the easement. (*Corning v. Gould*, 16 Wend. 530, 538.)

I think it quite needless to continue the discussion of the subject. I think the plaintiff was under no obligation to look beyond the records for anything affecting his title to the land he was about to purchase. As matter of fact, the defendants were trespassers, with no right as yet to occupy the easements of the abutting owner. The argument that Lathrop's demand in the action, however irrevocable, was equivalent to an election to abandon the easements does not commend itself. At most, it could be regarded as amounting to a conditional declaration of an intention to abandon. That would be insufficient, (2 Washb. Real Prop. 341), and it cannot be said that the defendants had seasonably acted upon it. Moreover, the importance of discovering from the circumstances the intention of the person, who is claimed to have abandoned his rights, is in its explaining and determining the significance of the act. Unless the intention accompany the act, its value, if the rights of others intervene, is at once affected. Here,

the attempted relinquishment of the easements appurtenant to the property by Lathrop was years after they had ceased to be his and when they had become the property of the plaintiff. The defendants were bound to know that they had passed to this plaintiff and they settled with Lathrop at their peril; if, in truth they did suppose that he could release these property rights to them. The terms, in which the release was couched, leave a not indistinct impression upon the mind that it was obtained and accorded for what it might be worth. Lathrop was in no position to release the easements, as of any time, and as against the then owner of the land his act was of no force. The only value of the release was as a settlement with Lathrop for the damages sustained by him during his ownership.

I think the judgment below was right and that it should be affirmed, with costs.

All concur (Peckham and O'Brien, JJ., in result).

Judgment affirmed.