[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 476 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 477 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 478 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 479 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 480 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 481 
It is obvious that when the deed by Mrs. McGown to the New York and Harlem Railroad Company was given, it was understood between the parties that its railroad was to be built upon an embankment or viaduct in Fourth avenue, as it expressly provided not only that the grantee should have twenty-four feet of land in the center of the avenue during its corporate existence upon which to construct its railroad, but it also conferred upon the company the right *Page 483 
to slope its embankment to the full width of the street. It is equally apparent that the grantor intended to confer upon the railroad company the right to construct, maintain and operate a steam railroad upon the premises so conveyed, and to thereby release it from any damages to her adjoining property arising from the proper exercise of that right. Thus the property now owned by the plaintiff which adjoins Fourth avenue became burdened with the easements or right of the company to maintain and operate its railroad at that place, so that neither the owner, nor her grantee, could recover damages for any injury to the property arising from the contemplated use, and could in no way interfere with the proper exercise of that right by the railroad company during its continuance.
The only injury or interference with the premises now owned by the plaintiff was found by the trial court to have been caused by acts and conditions which were necessarily and naturally incident to the operation of a steam railroad. The court expressly declined to find that those acts and conditions deprived the plaintiff of her property in the avenue, or of the easements appurtenant thereto, or to find that access to the premises, or the approach of light and air thereto, was obstructed otherwise than by acts and conditions which were incident to the operation of the defendants' railroad. It also declined to find that the construction and operation of the defendants' railroad had diminished the value of the plaintiff's premises.
An examination of the evidence contained in the record shows quite plainly that the trial court was justified in declining to find that the plaintiff's access, light and air were obstructed, except in the manner stated. Therefore, the question presented is whether, under the proof contained in the record, the plaintiff was entitled to restrain the defendants from operating their road upon the viaduct in front of her premises, upon the ground that it affected them in the manner in which the operation of a steam railroad thus located naturally and necessarily would.
It is to be remembered that Mrs. McGown was the common *Page 484 
source of title to both the plaintiff's and the defendants' lands, and that prior to her transfer of the premises now owned by the plaintiff she had transferred to the Harlem Railroad Company the right to build, maintain and operate its road in the center of the avenue where it is now located, thereby imposing upon the remainder of her land the burden of the presence of a railroad at that place to be maintained and operated as such. When she granted that right, it was the understanding of the parties that the premises granted were to be thus used, and was upon her part an irrevocable grant to the New York and Harlem Railroad Company and its successors of the right to so use the avenue during the period of the incorporation of that company. It in effect released to it any consequential damages to her remaining property which might be occasioned by the annoyances or injuries resulting from the operation of the road.
When that right was granted, Fourth avenue was but one hundred feet in width, and the viaduct or embankment first constructed by the defendants was at most but thirty-eight feet from the exterior street line. Since that time the street has been widened to one hundred and forty feet, so that the street line is now forty-two feet from the defendants' viaduct.
It is claimed by the plaintiff that, as the New York and Harlem Railroad Company used only twenty-six feet of the avenue for the construction of its first viaduct, it waived any right it possessed in the remainder of the street, and, consequently, was entitled to maintain its viaduct upon that portion of the street only. Where a right is obtained by prescription, the measure of the right is controlled by the extent of the use. But where, as in this case, there is an express grant, the fact that the grant to its fullest extent is not immediately used will not amount to an abandonment or waiver of the rights thus expressly granted. Where one acquires a title by deed, it will not be affected by non-user unless there is a loss of title in some of the ways recognized by law. Mere non-user, however long continued, does not create an abandonment. (Welsh v. Taylor, 134 N.Y. 450;Haight v. Littlefield, *Page 485 147 N.Y. 338.) Therefore, as between the plaintiff's grantor and the defendants, it is quite evident that the latter may exercise all the rights conferred upon them by the deed of Mrs. McGown, unless there has been a loss of that right in some of the ways recognized by law. There is no proof of any such loss. That the plaintiff's remote grantor, Mrs. McGown, surrendered the easements in Fourth avenue appurtenant to her abutting property, so far as the same were affected by the erection and operation of this railroad, there is no doubt, and the plaintiff could acquire no greater rights than were possessed by her. This court has several times held that a release or abandonment of the easements of light, air and access which are appurtenant to property abutting upon a public street may be established by any evidence which clearly indicates an intention upon the part of an abutting owner to abandon the right, at least where it has been acted upon by the other party. That the deed from Mrs. McGown to the defendant effected such a release and abandonment is obvious. (White v. M.R. Co., 139 N.Y. 19; Foote v. M.E.R. Co.,147 N.Y. 367; Ward v. M.E.R. Co., 152 N.Y. 39.)
Although, under the statute of 1807, the commissioners appointed made a map which included Fourth avenue, still, until the street was opened and the damages to the owners of the land paid, the title remained in the latter. By the Laws of 1831 the Harlem Railroad Company was vested with power to purchase and hold such real estate as was necessary for the purposes of its incorporation, and was authorized to build its road in the public streets or avenues laid out on the map of the city. That act also provided that sufficient space on each side of the railroad should be left for a public highway for carriages and for a sidewalk for foot travelers. These rights were reserved and granted, subject to the approval of the mayor, aldermen and commonalty of the city, which was obtained. In 1832, in pursuance of the power thus conferred, the New York and Harlem Railroad Company purchased the right of way of Mrs. McGown, *Page 486 
to which we have referred, and the road was constructed thereon. In 1835, with the consent of the legislature, the municipality widened this street and opened on each side of the defendants' railroad streets for teams and foot travelers as required by the statute to which we have adverted. When this street was opened, the municipality assumed to acquire the title of the New York and Harlem Railroad Company to the property which it owned in Fourth avenue, awarding it therefor the nominal sum of one dollar upon each lot. At that time, however, the municipal authorities and the legislature recognized the right of the railroad company to continue its road in the street and in no way disturbed its possession or the exercise of that right. It is claimed that by this proceeding the city became vested with the title to the property of the railroad company, and, hence, that the deed from Mrs. McGown to the New York and Harlem Railroad Company was abrogated and its effect wholly annulled. This contention cannot be maintained. If it be admitted that the naked title to the land passed to the city, it is still clear that the consent of Mrs. McGown to the construction and operation of this road did not pass with it. That grant was at least an irrevocable consent to the use of the land for a specific purpose, which continued and remained in the corporation to which it was made. But if, as claimed, it passed to the city, so that the city had the right formerly possessed by the railroad company, then it is equally clear that the right still exists, and as the city has consented to the use of the street, Mrs. McGown and her subsequent grantee are yet bound by that grant. When the street was opened in 1853, the railroad was upon a high viaduct along the center of the avenue which was in the sole and exclusive possession of the railroad, and no portion of it was occupied as a public street. Therefore, whatever rights the city may have acquired, it is quite evident that, so far as Mrs. McGown was concerned, the right which she had granted to the railroad company never revested in her, and, consequently, neither she nor her grantees can assert the right thus released. *Page 487 
In 1872 the legislature passed an act adopting a plan for the improvement of Fourth avenue. By that act the railroad corporation was authorized and required to regulate the grade of its road, and authorized to lay two additional tracks for the accommodation of traffic and to facilitate rapid transit in the city. By the same act the officers of the municipality were forbidden to obstruct the improvement or the use of Fourth avenue for that purpose. Therefore, not only the municipality consented to the improvement made in pursuance of that statute, but the legislature expressly authorized the use of the avenue for that purpose and to the width of the present structure, so that, unless the plaintiff has some right in the street which is superior to that of the defendants and to the combined power of the legislature and municipality, this action cannot be maintained.
It is manifest that the only injury the plaintiff has sustained resulted from the proper use and operation of the defendants' steam railway; and as the plaintiff's grantor expressly conveyed to the defendants the right to maintain and operate it there, the plaintiff cannot recover for any injuries arising from that cause. The defendants' use of the street for the purpose of building, maintaining and operating its railroad was a legal one. It was constructed and is maintained and operated under and by virtue of the grant by Mrs. McGown and the combined authority of the legislature and municipality. "The Legislature, by virtue of its general control over public streets and highways, has power to authorize structures in the streets which, without such authority and under the common law, would be held to be encroachments or obstructions, and this power it may delegate to the governing body of a municipal corporation." (Wormser v.Brown, 149 N.Y. 163, 171.) As the appropriation of this street by the defendant for the purpose of constructing and maintaining its road was legal, no merely consequential damage to the owner of an adjoining lot, having no title to the street, furnishes a ground of action against the defendant. (Fobes v. R., W. O.R.R. Co., 121 N.Y. 505, 518.) Where a railroad is built in a *Page 488 
public street or highway with proper care and skill, after the public rights and private property, if any, in the highway or soil have been acquired, the railroad is not responsible for any damages to private property necessarily resulting from its construction and operation. (Uline v. N.Y.C. H.R.R.R. Co.,101 N.Y. 98; Conklin v. N.Y., O. W.R. Co., 102 N.Y. 112.)
The cases of Reining v. N.Y., L. W.R. Co. (128 N.Y. 157) and Egerer v. N.Y.C. H.R.R.R. Co. (130 N.Y. 108) in no way impair the doctrine of the Uline and Conklin cases. Nor are they applicable to the facts in this case. In those cases it was held that the authorities of a city have no right to substantially close a street for ordinary street uses against an abutting owner, and that before an established street can be closed against such owner he would be entitled to compensation. In the case at bar the street at the place where the defendants' railroad was constructed was never opened or used as a public street of the city. The streets in Fourth avenue were, by the command of the statute, laid out upon either side of the railroad structure, and were the only streets ever actually opened in that avenue. So that the plaintiff never acquired or possessed any right to the use of Fourth avenue as a public street, except such as she now enjoys.
This case is clearly distinguishable from the elevated railroad cases upon which the plaintiff relies. In those cases there was no grant by the abutting owners of the right to use the street for the purposes for which it was used, and the appropriation of the street was held to be illegal, while here the use of the street was legalized by a grant from the plaintiff's grantor, as well as by the legislature and municipal authorities. We are of the opinion that the grant to the New York and Harlem Railroad Company by the plaintiff's grantor is a substantial bar to the plaintiff's claim in this action. It is no answer to this position that the city subsequently, for a nominal consideration, obtained by condemnation the naked fee to the twenty-four feet of land deeded by Mrs. McGown to the New York and Harlem Railroad Company. In whomsoever the mere *Page 489 
naked title to the twenty-four feet may rest, it is obvious, from the record, that the right to maintain and operate the defendants' road, with the consent of the plaintiffs' grantor, was not intended to be affected, but to remain in the defendants as a protection to their right, so long as the road was operated in that avenue and the time mentioned in the grant had not expired.
Under these circumstances, we agree with the learned trial court that neither Mrs. McGown nor her grantees, immediate or remote, can properly ask a court of equity to enjoin the operation of the defendants' railroad, to which her assent was thus expressly given. In American Bank Note Co. v. N.Y.E.R.R.Co. (129 N.Y. 252) this court held that where a public use authorized by law takes no land of an individual, but merely affects him by his proximity, the necessary annoyances of that use furnish no basis for damage. It was there expressly decided that noise was not an injury for which damage might be recovered, and that in that class of cases the abutter could recover only the damages to his easements of light, air and access. InWormser v. Brown (149 N.Y. 163) this court determined that an interference with the view from the plaintiffs' windows would not entitle them to relief by injunction, and that the granting or refusal of equitable relief by way of injunction depends to a great extent upon the particular facts in each case, and is largely discretionary with the court in which the action originated. In People ex rel. N.Y. H.R.R. Co. v.Commissioners of Taxes (101 N.Y. 322) the judgment of this court was to the effect that the tunnels, tracks, superstructure, substructures, stations, viaducts and masonry of the defendants situated upon this avenue were land, within the meaning of the statute in reference to property liable to taxation, and that the fact that the city was required to pay a portion of the expense of the construction of the viaduct in question did not divest it of the incidents of other property belonging to the railroad company, or give the city any title to it, especially in view of the fact that the city was forbidden to obstruct the improvement or the use of Fourth avenue above Forty-second *Page 490 
street for that purpose. Under the circumstances of this case, it is manifest that the abutting owners who derived their title from Mrs. McGown subsequent to her grant to the New York and Harlem Railroad Company were not entitled to have that portion of the avenue upon which the defendants' viaduct stands opened as a part of the public street, but that the only streets for public use which existed in Fourth avenue, or to the use of which they were entitled, were streets forty-two feet in width upon each side of the viaduct occupied by the defendants.
The plaintiff, however, contends that the increase in width of the viaduct from twenty-six to fifty-six feet was an additional burden upon the plaintiff's land, and, therefore, to the extent of such increase, the acts of the legislature and municipal authorities were unauthorized and the defendants' use of the street was an invasion of her rights as an abutting owner. Inasmuch as the trial court has properly refused to find that the plaintiff's easements of light, air and access were invaded or impaired, except by such acts and conditions as were incident to the operation of a steam railroad, to which her grantor consented, we think there was no such added burden as would justify this court in holding as a matter of law that the trial court should have awarded her relief by injunction. While the additional traffic over the defendants' road, resulting from an increased population and an enlarged business, may have added to the number of trains passing the plaintiff's premises, still, as it does not appear that the same number of trains might not have passed and the same traffic might not have been conducted upon the two previously existing tracks, and have been equally annoying and burdensome to the plaintiff's property, and as the consent of Mrs. McGown was unlimited in that respect, it would be difficult to determine the extent of any such added injury, if it exists, or to hold that it was not within the intention of the parties and covered by her grant.
Moreover, when the plaintiff purchased her premises, the defendants' viaduct had existed for many years, had occupied *Page 491 
the entire portion of the street where it now stands, and was used substantially as when this action was commenced. She purchased the premises with full knowledge of its existence, of its purpose and use, and with constructive notice of the defendants' rights. With that knowledge, presumably she made the purchase for a price which included all proper deductions from its value by reason of the presence of the defendants' railroad, and, hence, lost nothing by being deprived of any of her otherwise appurtenant easements.
Under these circumstances we are of the opinion that the learned trial court was justified in declining to award to the plaintiff the relief demanded, and that this court cannot hold as a matter of law that the discretion of the court below was improperly exercised.
We have examined the various exceptions of the plaintiff relating to the reception and rejection of evidence, to the findings of the court and to the refusal of the court to find as requested, without discovering any that would authorize a reversal of the judgment or that requires further discussion.
The judgment should be affirmed, with costs.
All concur, except PARKER, Ch. J., not sitting.
Judgment affirmed.