## AS TO ABANDONMENT OF A RAILWAY EASEMENT.

Circuit Court of Cuyahoga County.

THE CLEVELAND & PITTSBURGH RAILWAY COMPANY ET AL V.
FRANK B. WARD ET AL.

Decided, October 28, 1912.

*Railroads—Easements—Abandonment—When Construction of New Line Does Not Abandon Old Right-of-way—Abandonment of Easement a Question of Intention.*

1. When land has been acquired for a right-of-way by a grant to a railroad company which contains a clause to the effect that the land is to be used only for the purpose of operating a railroad over it and for purposes convenient thereto, the passage of a resolution by the board of directors of the railroad at a later date, reciting that, for the purposes of eliminating grades and curves and to facilitate travel the line of the railway should be changed at that point, the actual construction of a new line of road upon a new right-of-way, and the removing of the rails and ties from the old right-of-way, do not amount to an abandonment of the old right-of-way for all purposes connected with the operation of a railway if the railroad company continues to exercise dominion over it and it appears that it would be valuable to the company for switching purposes.

2. The question whether or not there has been an abandonment of an easement is to be determined by the intention of the holder of the dominant estate and such intention is not proven by a mere non-user for a period of three years.

*Squire, Sanders & Dempsey,* for plaintiffs.
*C. J. Gould* and *A. W. Lamson,* contra.

MARVIN, J., WINCH, J., and NIMAN, J., concur.

Each of the plaintiffs is a railroad corporation. The first is the owner of a railroad line extending from the city of Cleveland, Ohio, easterly through Bedford Township, Cuyahoga county, Ohio, to the city of Pittsburgh, Pa. The second is a lessee of this line of road from the first, and is the sole operator of the said line of railroad.

The defendant, Frank B. Ward, is the owner of certain land in Bedford township through which said railroad line as origi-

nally constructed in or about the year 1850 passed, and over which the same was operated, continuously, up to about the month of May, 1904.

The Cleveland & Pittsburgh Railway Co. obtained its rights in the land, which is in dispute in this case, from the predecessors in title of the said Frank B. Ward. The greater part of said land was owned, at the time of the original construction of the railroad, by J. W. Ward. Another parcel was owned by School District No. 7 of Bedford township, and still another by one Samuel Burchfield. Whatever rights said original owners would have had in the present action, had there been no change of ownership, are now in the defendant, Frank B. Ward, as the successor in title of said original owners.

From those several original owners, the Cleveland & Pittsburgh Railway Co. obtained its rights by instruments in writing, all of said instruments being substantially alike. Each recites the legislation by which the railroad company was authorized to construct its line of railroad, etc., and then in the writing of J. W. Ward these words follow:

"Now, therefore, in consideration of the benefit to accrue to my property by the construction of said road, and especially for $180 to be paid by said company on entering the land for the construction of said railroad, I hereby agree to grant to said company the right of way for said road through and over the lands belonging to me, and particularly to the following described land lying in the township of Bedford in the County of Cuyahoga, being part of lots numbers 76 and 77 as now staked and located, it being understood and agreed that the said Ward is to make and construct his wagon way and crossing according to the directions of the company's engineer, at his own expense. The said right of way, however, not to exceed 66 feet in width; to be held by said company, its successors and assigns forever, but for the purpose only of running a railroad over the same, and for purposes convenient thereto. And I agree that the said company may forthwith enter upon the possession of the land and take the materials hereby granted, and that I will execute according to law any deeds or other instruments in writing for the full and perfect conveyance of the rights hereby granted on reasonable request by said company.

"Bedford, October 10th, 1849.

"(Signed)    J. W. WARD.

"Received the consideration mentioned in the within. $180 October 13th, 1849.

"(Signed)    J. W. WARD."

Without quoting from the other writings, they are in effect the same, differing in the consideration, and the description of the land, and in no other material particular.

Later in this opinion these instruments are spoken of as grants, under authority of *Railroad Co.* v. *Ruggles,* 7 O. S., 1, Judge Brinkerhoff, in the opinion at ·page 7, speaking of a similar writing, says it is to be treated as if it were a formally executed legal conveyance.

Some time prior to the year 1900 the Cleveland & Pittsburgh Railway Co. decided to construct a new line of road between the village of Bedford and a point something like two miles southerly or southeasterly from said village, between which two points the line as originally constructed and as operated up to the month of May, 1904, was over and upon the land described in said several instruments of writing, hereinbefore referred to.

In furtherance of said purpose to construct such new line, the board of directors of the Cleveland & Pittsburgh Railway Co. took action on the 15th day of March, 1901, as appears by the minutes of the proceedings of said board in these words:

"*Resolved:* By the board óf directors of the Cleveland & Pittsburgh Railroad Company, that, for the purpose of avoiding annoyance to public travel and difficult and dangerous curves and grades in its railroad, and to facilitate the movement of the greatly increased traffic, and to enable this company to more efficiently and satisfactorily perform its duty to the public as a common ·carrier of freight and passengers, it is necessary to change the location and grade of its railroad from a point at or near Wheelock Summit, Cuyahoga county, Ohio, to a point in the village of Bedford, Cuyahoga county, Ohio, for a distance of about 40,000 feet without, however, departing from the general route prescribed in its Articles of Incorporation.

"*Further Resolved:* That for the purpose aforesaid, the location of this company's railroad be changed between the points above stated from its old location to the new location, as shown on the map presented to this board, marked 'No. 7902,' which said new location shown upon said map is hereby adopted as and

for the location of this railroad between said points, the same being more particularly described as follows, to-wit:

"Diverging from the old location of the Cleveland & Pittsburgh Railroad Company at a point near the Wheelock Summit by a 50 degree curve to the left."

Then follows a particular description of the proposed new line.

The new line so decided upon was constructed by the Cleveland & Pittsburgh Railway Co., and trains began running thereon in May, 1904.

Within a few months thereafter the rails and ties were removed from the old line, leaving along said line, or on a considerable part thereof, fills and embankments which consisted of gravel, earth, stone, cinders, etc., used in construction of the old road bed.

The defendant Ward, claiming to own the unused right-of-way, was, at the bringing of this action, removing from such old road-bed such material, and the other defendants, the township trustees, were also removing such material from said old bed, claiming their right so to do by consent given to them by said defendant Ward.

This action was brought on the 20th day of November, 1907, seeking to enjoin the defendants from removing such material and from in any manner interfering with said road-bed or its material, or any part thereof.

From the instruments under which the railroad company acquired its rights in the land in controversy, whenever it abandons the same for railroad purposes, it loses all right therein.

The language of Ward's grant is:

"To be held by said company, its successors and assigns forever, but for the purpose only of running a railroad over the same, and for purposes convenient thereto."

The language of the school board grant is:

"To have and to hold the above granted and bargained land in the said company or its assigns and successors forever, for the purpose of running as many sets of track over the same as said company at any time may deem necessary, and also for any other purposes necessary, useful or convenient in the location, con-

struction and repair of said road, and all work whatsoever, which may be necessary, useful or convenient for the use of said railroad, and for no other purpose.''

The language of the Burchfield grant is:

''To be held by the said company, its assigns or successors, forever, for the purpose only of running a railroad over the same land for purposes convenient thereto.''

It has already been said in this opinion that the effect of each of these grants is the same. Each authorizes the railroad company to use the land for any legitimate purpose, for the successful operation of a railroad.

Although the company, as already said, removed its ties and rails from this land in 1904, it does not necessarily follow that it thereby abandoned the same for all purposes connected with the operation of its railroad.

It is shown that the company has crossed the right-of-way, claimed by the defendants to have been abandoned, with three switch tracks to reach an extensive manufacturing plant, and that, within a few weeks it has laid ties and rails along the old right-of-way for a distance of 1,400 feet or more, and connected the same by a switch with the present through line, using this track so laid for cars to get them out of the way of trains on the main line. It has done some fencing in and some mowing of weeds and grass on this land; not very much, as indicating the use to which it proposed to devote the land, but it is shown that it is feasible to connect by proper switches, the tracks of the present operating line with tracks on the old line if they should be laid thereon, and that such old line might be useful and valuable for the running of freight trains and for storing of cars, and perhaps for other purposes.

On the part of the defendants it is urged that the resolutions of the board of directors of the railroad company passed on the 15th of March, 1901, from which quotations are made earlier in this opinion, and the construction of the new line in accordance with such resolutions, established the claim of the defendants that the company thereby abandoned its old right-of-way.

This action of the board was taken under authority of Section

3277, Revised Statutes, and 8753, General Code, then and now in force which read:

"For the purpose of avoiding annoyance to public travel, or dangerous or difficult curves or grades or unsafe or unsubstantial grounds or foundations, or when the road bed has been injured or destroyed by the current of any river, water-course or other unavoidable cause, or for other reasonable cause, a company may change the location or grade of any portion of its road, whether heretofore made or hereafter to be made, but shall not depart from the general route prescribed in the articles of incorporation."

Certainly it does not follow from the action of the board or the authority given by the statute, that the company undertakes to devote the land covered by the old track to some purpose other than that of a railroad.

Section 8755, General Code, provides:

"When the location is changed, after the road has been used for transportation of persons and property, the company shall be liable for all damages occasioned by the change, to the owner of the land upon which the road was first constructed."

Reading this in connection with Section 8753, General Code, it is urged on behalf of the defendants that the statutes contemplate that the change of location provided for in the former of these sections, necessarily results in the complete abandonment of the right-of-way. This contention does not seem to be sound. The change may or may not cause damage to the land owner, and there might be damage to him by making a change of location so that the right-of-way through his land was used for storing cars only; but it would hardly be claimed that even if he were damaged by the change in the use last suggested, the railroad company, had abandoned the use of the land for railroad purposes.

The first case to which our attention is called by the defendant is that of *Columbus v. Railroad Company*, 37 Ind., 294. In that case it was held that the changing of the line of a railroad which ran through the city of Columbus so that the trains ran on a new line outside the city, leaving the tracks still down in the city, but so disconnected with the new line by the taking up

of a part of its track that trains could not run through on it, but so that it could be used as a switch, was not an abandonment of the old line.

Another case cited on the part of the defendants is *Railroad Co.* v. *Mecartney,* 104 Cal., 616. This was a suit by the railroad company to quiet its title to a strip of land 12½ miles long; the width is not given, but it plainly appears that the strip was a right-of-way for the tracks of the railroad company. The defendant claimed title through a tax sale, and in discussing the validity of the sale the court said, incidentally, that:

"The right-of-way is in the nature of an easement, and is acquired only for the purpose of the railroad. When the road is abandoned or removed from the strip of land over which the railroad has a right-of-way, the land is discharged of the burden. The right-of-way no longer exists."

This was said, not because there had been any removal of the road here from the right-of-way, but as illustrating that application of the taxing laws of the state.

In *Railroad Co.* v. *Frowein,* 163 Mo., 1, land was conveyed to a railroad company on condition that it would operate a railroad with passenger and freight trains over the land, which was adjacent to a river where the grantor had a ferry, and would send all its passengers and freight across the river by the grantor's ferry. This it did for ten years, then built a bridge across the river and so took the traffic from the grantor; then with the consent of the railroad company, the grantor leased the land to a lumber company. The railroad company sold its buildings on the land to the lumber company, which used the premises for its business until the expiration of the lease, when the grantor purchased the buildings from the lumber company and leased them to various tenants. It was held that the railroad company could not maintain ejectment, and that under the peculiar facts of that case, the railroad company had forfeited its title, although it had not absolutely abandoned the use of all the land.

Another case cited is *Railroad Co.* v. *Rich,* 91 Mich., 293. In that case there was no question such as in the case under consideration. It was a suit brought to obtain an order of court to abandon a railroad constructed in part by local subscription,

and to repay the petitioners the money put in by them for the construction of the road. The suit was brought under a statute of the state; the question was whether the railroad company had so far fallen short of its obligations as to justify the order prayed for. The trial court held that it had not. This was reversed by the Supreme Court.

We have been embarrassed in this case by being unable to find some of the authorities on which defendants rely, there being some mistake in the citations made in the brief, but so far as we have found the authorities they fail, as we think, to sustain the claim of the defendants on the question of abandonment.

It is contended by the defendant that the railroad company is undertaking to use the lands in question for anything other than railroad purposes, but that it has ceased to use them for any purpose, and that this constitutes an abandonment in such wise that the company's rights in the land are forfeited.

In *Conabeer* v. *Railroad Co.*, 156 N. Y., 474, it is said:

"Where one acquires title by deed it will not be affected by nonuser, unless there is a loss of title in some of the ways recognized by law, since mere nonuser, however long continued, does not create an abandonment."

The question of abandonment of the rights of one in lands granted to him or it for specified purposes only is said, in numerous cases in Ohio and elsewhere, to be eminently one of intention. See *Garlick* v. *Railway Co.*, 67 Ohio State, 223; *Nail & Iron Co.* v. *Furnace Co.*, 46 Ohio State, 544; *Hatch* v. *Railway Co.*, 18 O. S., 92; *Townsend* v. *Railway Co.*, 101 Federal, 737; *Peter* v. *Caswell*, 38 O. S., 518.

In this last mentioned case a mill race had been dug by a mill owner in such a way as to cause the water of a stream to flow in such race and not in its natural channel, for a considerable distance, where it turned the wheel of the mill, returning below the mill to its natural channel. The flood-gate was, however, maintained at a point where the current left the natural channel, so that whenever repairs were required to be made on the mill, the water could be cut off from the race and returned to the channel.

For more than twenty-one years the water was carried through this mill race, and only occasionally and temporarily turned into the natural channel for the purpose of making repairs on the mill. The channel had so long been disused that it became obstructed and partially filled, so that it was not sufficient to carry off all the water which had originally passed through it.

It was held that nothing in this condition of things or the acts of the parties showed that the use of the ancient channel had been permanently abandoned.

In the case of *Garlick* v. *Railway Co., supra,* the court in its opinion cites a large number of authorities on the question of what constitutes abandonment, and the court quotes with approval, from *Washburn's Easements and Servitude,* the following language:

"It is not easy to define in all cases what would be such act of abandonment as would destroy a right of easement, and each case seems to be a matter for a jury to determine. But nothing short of an intention to so abandon the right would operate to that effect, unless other persons had been led by such acts to treat the servient estate as if free of the servitude, and the same could not be resumed without doing injury to their rights in respect to the same. And in this it is not intended to embrace questions which may arise from a mere nonuser of an easement."

The facts in this case do not seem to warrant the conclusion that the railroad company ever intended to abandon the right-of-way on which the railroad was originally constructed. At most, it can only be claimed for the defendants that there was a non-user of this right-of-way for a period of about three years, for the rails and ties were removed in 1904 and in 1907 when the defendants assumed the right to remove and began to remove the materials of which the old road-bed was constructed, this action to enjoin such removal was begun.

True, during the period from the removal of the ties and rails to the bringing of this action, the railroad company did very little upon this right-of-way to indicate ownership. However, there was some cutting of weeds and grass, as already said, and it can hardly be supposed that the railroad company, if it was its intention to abandon this right-of-way, would have done anything upon the ground.

The land in dispute in this right-of-way is near to a great city, and passes through a manufacturing district in the village of Bedford, where it hardly seems probable that the railroad company would expect to abandon lands which they had a right to use for railroad purposes. Such lands would seem to be exceedingly valuable for a right-of-way, even though the main line of the road had been diverted from this old right-of-way to a distance in some places of several hundred feet, and even though such old right-of-way crosses Tinkers Creek and two or more public roads in suchwise that the building of a track along the entire old right-of-way that would connect with the tracks as now operated on the new right-of-way, would be attended with considerable expense. But when we remember the expenditures which railroad companies make to cross streams and to pass through obstructions, such as great hills and even mountains, the matter of expense does not loom up as a preventive, as it does in those smaller enterprises where but a few hundred thousand dollars are invested.

We reach the conclusion, therefore, that the plaintiff is entitled to the injunction prayed for, and the same is allowed.