ANNA B. WHITE et al., Respondents, v. THE MANHATTAN RAILWAY COMPANY et al., Appellants.

*It seems* that an easement to do some act of a permanent nature upon the lands of another cannot be created by a license, even when in writing executed upon a good consideration; it can only be created by a deed or conveyance operating as a grant.

*It seems*, also, that while a license to do such an act is a sufficient protection to the licensee while it lasts, it may be revoked at any time, and after its revocation it may not be used as a protection for any future acts.

*It seems*, also, there can be no equitable estoppel which will operate to prevent the revocation of the license, grounded upon the fact that the licensee has entered upon the land and expended thereon labor and money upon the faith of the license.

The easement, however, of an abutting owner in New York city, who has no title to any portion of the street upon which his land abuts, may be abandoned and thus extinguished by acts showing an intention to abandon, and when a third person interested in the servient estate has acted upon the abandonment, and as to him it would operate unjustly if the exercise of the easement should be resumed, this may not be done.

So, also, where an elevated railroad company in said city has procured the consent of the city authorities to the construction of its road in the street, it has an interest therein in the nature of property, sufficient to enable it to treat with the abutting owners, and a full, unconditional and absolute consent given by such an owner to the erection of the road, as to the company, and to the extent that the easement will necessarily be affected by the building of the road, amounts to an abandonment and extinguishment thereof, and the owner is not entitled to claim damages consequent upon the erection and operation of the road.

As to whether such a consent, given without any valuable consideration, may be withdrawn before the company has acted under it *quære*.

Where, however, the abutting premises are owned by the members of a firm as tenants in common, a consent to the operation of the road, signed in the firm name by one of the members, does not bind or affect his copartners, in the absence of evidence showing authority to sign for the firm; it is not a partnership matter in regard to which a member may act for the firm.

(Argued June 9, 1893; decided October 3, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made January 14, 1892, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This was an action by the abutting owners of certain property on Chatham square, in the city of New York, to restrain the operation and maintenance, by defendants, of their road in front of said premises and for damages.

The facts, so far as material, are stated in the opinion.

*Brainard Tolles* for appellants. The plaintiffs are precluded from maintaining this action by the consent to the construction and operation of the elevated railway, given by the firm of W. M. Seymour & Co. (*Dunham* v. *Williams*, 37 N. Y. 251; *Kane* v. *N. Y. El. R. Co.*, 125 id. 164, 177, 181; *Abendroth* v. *M. R. Co.*, 20 J. & S. 274; Gerard Titles to Real Estate, 499; *Jackson* v. *Hathaway*, 15 Johns. 447; *Fearing* v. *Irwin*, 4 Daly, 385; *English* v. *Brennan*, 60 N. Y. 609; *White's Bank of Buffalo* v. *Nichols*, 64 id. 65; *K. C. F. Ins. Co.* v. *Stevens*, 87 id. 287; *U. B. G. Society* v. *Robinson*, 5 Wheat. 21; *People* v. *O'Brien*, 111 N. Y. 1; Washb. on Easements [4th ed.], 707, 726, 729; *Steere* v. *Tiffany*, 13 R. I. 568; *King* v. *Murphy*, 140 Mass. 254; *Westcott* v. *N. Y. & N. E. R. Co.*, 152 Mass. 465; *Crossley* v. *Lightowler*, L. R. [2 Ch. App.] 478, 482; *Regina* v. *Chorley*, L. R. [12 Q. B.] 515; *Vogler* v. *Geiss*, 51 Md. 407, 411; *Dyer* v. *Sanford*, 9 Metc. 395; *Curtis* v. *Noonan*, 10 Allen, 406; *Morse* v. *Copeland*, 2 Gray, 302; *Pope* v. *Devereux*, 5 id. 409; *Cartwright* v. *Maplesden*, 53 N. Y. 622; *S. V. O. Asylum* v. *City of Troy*, 76 id. 108, 113; *Winter* v. *Brockwell*, 8 East, 308; 2 Washb. on Real Prop. [5th ed.] 397; *Pratt* v. *D., M. & N. W. R. Co.*, 72 Iowa, 249; *Cook* v. *C., B. & Q. R. Co.*, 40 id. 451; *M. U. B. W. Co.* v. *C., R. I. & P. R. Co.*, 79 id. 613; *Burkham* v. *O. & M. R. Co.*, 122 Ind. 344; *Wolfe* v. *C. & L. R. Co.*, 15 B. Mon. 494; *Snell* v. *Levitt*, 110 N. Y. 595; *Welsh* v. *Taylor*, 134 id. 450; *Kane* v. *N. Y. E. R. Co.*, 125 id. 164; *Thomas* v. *Scutt*, 127 id. 133; *Humphreys* v. *N. Y., L. E. & W. R. Co.*, 121 id. 435; *West-*

*cott* v. *Thompson*, 18 id. 363 ; *Pattison* v. *Hull*, 9 Cow. 747 ; *Renard* v. *Sampson*, 2 Duer, 285 ; 12 N. Y. 551 ; *Van Allen* v. *Allen*, 1 Hilt, 524 ; *Austin* v. *Sawyer*, 9 Cow. 39 ; *Norton* v. *Coons*, 6 N. Y. 33, 41 ; *Hall* v. *Newcomb*, 7 Hill, 416 ; *Wintermute* v. *Light*, 46 Barb. 278 ; *Stevens* v. *Cooper*, 1 Johns. Ch. 245, 425 ; *Moss* v. *Averill*, 10 N. Y. 449 ; *Heard* v. *Hall*, 16 Pick. 457 ; *Harney* v. *Morton*, 36 Miss. 411.)   The findings of fact do not sustain the conclusion of law awarding $4,000 as past damages. (*Griswold* v. *M. E. R. Co.*, 122 N. Y. 102.)   The court erred in permitting the witness Martine to express his opinion as to the value of the premises, if the the railroad were not in front of them. (*McGean* v. *M. R. Co.*, 117 N. Y. 219 ; *Avery* v. *N. Y. C. & H. R. R. Co.*, 121 id. 31 ; *Roberts* v. *N. Y. E. R. Co.*, 40 N. Y. S. R. 454 ; *Doyle* v. *M. R. Co.*, Id. 474 ; *Gray* v. *M. R. Co.*, Id. 478 ; *Jefferson* v. *N. Y. E. R. Co.*, 132 N. Y. 488.)   If the defendants' first point be sustained, the judgment should be reversed and the complaint dismissed upon the merits, with costs to the defendants. (*Brackett* v. *Griswold*, 128 N. Y. 644 ; *Munro* v. *Tousey*, 129 id. 38.)

*Leo C. Dessar* for respondents.   The plaintiffs are not estopped by any act of their predecessors in title. (*Wiseman* v. *Lucksinger*, 84 N. Y. 31 ; *Murdock* v. *P. P. & C. I. R. R. Co.*, 73 id. 579 ; *Eckerson* v. *Crippen*, 110 id. 585 ; *Fagin* v. *Walton*, 107 id. 399 ; *Wheelock* v. *Noonan*, 108 id. 179 ; *Winne* v. *U. C. S. Bk.*, 37 Hun, 349 ; *Cronkhite* v. *Cronkhite*, 94 N. Y. 323 ; *Wheeler* v. *Reynolds*, 66 id. 227 ; *Miller* v. *A. & S. R. R. Co.*, 6 Hill, 61 ; *Dubois* v. *Kelly*, 10 Barb. 509 ; *Mendenhall* v. *Klinck*, 51 N. Y. 250 ; 1 Washb. on Real Estate [4th ed.], 33.)   The admission of the testimony of the expert, Mr. Martine, will not work a reversal of this judgment. (*Forest* v. *Forest*, 25 N. Y. 510 ; *People* v. *Gonzales*, 35 id. 59 ; *Tenny* v. *Berger*, 93 id. 524.)

PECKHAM, J.   On the 28th day of July, 1887, the plaintiffs became owners of certain land, with the buildings thereon,

situated on Chatham square, in the city of New York. They are respectively the widow and daughter of one James H. White, who died on the above date in the possession and ownership of the premises, and who devised the same to the plaintiffs.

The railroad of the defendants was at that time in operation in Chatham square, and on the 30th day of July, 1888, the plaintiffs commenced this action for the purpose of recovering damages which they alleged had been already sustained by them from the operation by defendants of the railroad in front of the plaintiffs' premises without having obtained the right to do so from the owners thereof, and also for the purpose of enjoining the defendants from the further operation of the road unless they paid the damage which such operation of it would thereafter occasion to the plaintiffs as the owners of the premises in question. They recovered judgment for both kinds of relief. Upon the trial the defendants proved that in 1875 the premises were owned by the firm of W. M. Seymour & Co., hardware merchants, and the firm was then composed of William M. Seymour, James H. White and Jonathan E. Brush. In February, 1877, Brush conveyed his interest in the premises to his partners, Seymour and White, and in March, 1882, the executor of Seymour, under due authority in the will of the testator, conveyed the interest in the premises of which testator died seized, to James H. White, the plaintiffs' testator.

The defendants further proved that in October, 1875, while the premises were owned by and in the possession of the firm, one of the members thereof (Jonathan E. Brush) signed a paper which reads as follows:

"We, the undersigned, owners of land bounded on Chatham street, east side, between Roosevelt and East Broadway, hereby respectively consent to the construction and operation of an elevated railway over, through and along said street, the said railway to be constructed and operated by either the New York Elevated Railroad Company, or a company to be organized under chapter 606 of the Laws of 1875.

"Dated New York, *October*, 1875.

" Street number.............................      4
" Ward number ............................    781
" Street front ..............................  34.4
" Owners.............................. Seymour & Co.
" Residence................................  ————
" Valuation.............................. $20,000
" Signature .................... W. M. Seymour & Co."

The railroad was constructed subsequent to the execution of this paper, and has been operated as alleged in the complaint.

The court was requested to find the fact as to the execution of this paper, and the subsequent construction of the railroad in accordance with the proof, which was uncontradicted, but the request was refused and an exception duly taken. The principal question in the case arises upon the materiality of this exception.

The plaintiffs insist that the paper was of no more effect than a parol license to do work on the land of the licensor would have been, and that it was revocable at the pleasure of the licensor, and that a revocation was effected by the conveyance of the land, and by the commencement of this action by the devisees of the former owner, James H. White.

There is no finding or proof that the plaintiffs have any title to any portion of the street or square upon which their building fronts, but there is a finding that they acquired with their title to the premises the right to have Chatham square kept open as a public street, " and to have a free and unobstructed right of way, access and passage to and from said premises, and over and upon said street, together with all the use and benefit of the light and air coming in and upon said lot and premises through and from said street, free and unobstructed."

I think the proof shows without contradiction that all the rights in the street they had were what has been termed property rights in the nature of easements of light, air and access. (*Story Case*, 90 N. Y. 122; *Kane Case*, 125 id. 164, and cases cited.)

The defendants, therefore, insist that as the plaintiffs or their predecessors had no title to any portion of the street, the consent of their predecessors, while in the possession and ownership of the abutting land, that the defendants might construct and operate the railroad in the square in front of their land, was more than a mere license to do an act on the land of the licensor, and that it amounted in law and in fact to an abandonment of their rights or easements in the street so far as was necessary for the construction and operation of the railroad, and that the consent to such construction having been acted on and large amounts of money expended on the faith thereof, the plaintiffs as the successors of those who gave the consent are themselves estopped from making any claim for damages arising from such construction and operation. It has been the law in this state for a number of years, that an easement to do some act of a permanent nature on the land of another can be created only by a deed or conveyance in writing, operating as a grant, and that a consent in writing on the part of the landowner is no more valid than if it were by parol.

Thus a parol agreement by the owner of the land that a person may abut and erect a dam on such land, not for a temporary purpose, but for a permanent use such as the creation of a water power for the use of mills, is void, and the agreement being a mere license may be revoked even after it has been acted upon by the other party. Also a permanent easement to drain through the land of another is not created by a license so to do, even when in writing and made upon a good consideration. (*Mumford* v. *Whitney*, 15 Wend. 381; *Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323; *Babcock* v. *Utter*, 1 Abb. Ct. of App. Dec. 27, and cases cited; *Eckerson* v. *Crippen*, 110 N. Y. 585.)

The question of the establishment of an easement by adverse user, which may authorize the presumption of a grant, is not involved, nor is the ability to thus prove its existence denied. (*Hammond* v. *Zehner*, 21 N. Y. 118.) It is, however, held (what would otherwise seem to be plain enough) that there

can be no adverse user where the right to use exists and is exercised under a license. (84 N. Y. 31, *supra.*)

The reasoning upon which these decisions as to the insufficiency of a license are based, is that the right which is claimed under a license amounts to an interest in land and that such interest cannot be created and cannot pass to another without a proper conveyance or grant of such interest in writing and under seal as required by our statute. It is said that a license is a mere authority to enter upon the land, and is a sufficient protection to the licensee while it lasts, but that it may be revoked at any time, and after its revocation it cannot be used as a protection for any future acts. It is held there can be no equitable estoppel which will operate to prevent the revocation of the license, grounded upon the fact that the licensee has entered upon the land of the licensor and expended thereon labor and money upon the faith of the license, because it must be held that the licensee knew that the license gave him no interest in the land, and that he must rely only upon the indulgence of the licensor, and if that be withdrawn he must himself withdraw from the land. Otherwise, it is said, the statute in regard to the creation and conveyance of interests in land would be in great part abrogated. The easements of abutting owners in New York city, who are without title to any portion of the streets upon which their lands abut, differ somewhat in their origin from ordinary easements. They have not been created by grant or covenant, but it is said of them that it is easier to realize their existence than to trace their origin; that they arise from the situation, the course of legislation, the trust created by statute, the acting upon the faith of public pledges and upon a contract between the public and the property owner, implied from all the circumstances, that the street shall be kept open as a public street, and shall not be devoted to other and inconsistent uses. (*Kane Case,* 125 N. Y., *supra.*) Whatever the means by which the easements were created they are in their nature the same as if they had been created by grant. The owners thereof cannot be divested of them without their consent unless they are

compensated therefor. Although it may generally be said, under the authority of the cases already cited, that an easement in the nature of an interest in the land of another can only be created by a grant, yet after it has been created and while it is in existence, it may be abandoned and thus extinguished by acts showing an intention to abandon and extinguish the same. This has been many times decided and by many different courts. A cesser to use, accompanied by an act clearly indicating an intention to abandon the right, would have the same effect as a release without reference to time. (*Snell* v. *Levitt*, 110 N. Y. 595, and cases cited in opinion of EARL, J., at page 603.) The intention to abandon is the material question, and it may be proved by an infinite variety of acts. If a third party interested in the servient estate has acted upon such abandonment, and in regard to whom it would operate unjustly if the exercise of the easement should be resumed in favor of the dominant estate, added force is given to the claim of abandonment. (Id.)

The railroad company having procured the consent of the authorities of the city to the construction of the railroad in the street or square in question upon the terms agreed upon, such company obtained an interest in and to a certain extent a title to the street for the purpose of the construction and operation of its railroad, which was in the nature of property, and which was sufficient to enable it to treat with abutting property owners in the character of one who had an interest in the servient estate. (*People* v. *O'Brien*, 111 N. Y. 1.)

The case before us is, therefore, different from those cases where an easement has been claimed to have been created in the land of a third person, by reason of his mere license to enter upon his land and do some act of a permanent nature which would amount, if the right should continue, to an interest in the land of such person. This interest in land, the cases hold, requires a grant. In this case the owners of the abutting land had no title to the street. They had an easement in it only, and their consent purported to carry no title to land. There can be no question that they had the right to release,

abandon or otherwise extinguish that easement, and upon such terms as they should think fit. The question before us is, whether they have done so and to what extent by the execution of the paper proved upon the trial.

Assuming that it was executed by each of the parties who owned an interest in the abutting land at that time, what was its effect? The parties were under no obligation of a legal or moral nature to give this consent. There was nothing in the law, nor, so far as appears, in the circumstances surrounding the parties, which called upon the owners to give their consent upon any condition other than that which operates in all strictly and purely business transactions, the consideration of benefit to themselves. These owners occupied no public position with regard to their property; they were in no sense trustees either for the public or for any human being. They represented only themselves and their own interests, and in deciding whether to consent to the building of the road or not they had legally or morally no possible reason for consulting any but their own interests, as they thought they might be affected by the construction and operation of the road. Under such circumstances, when an abutting landowner is confronted with the question whether he will or will not consent to such construction and operation, and he gives in writing a full, unconditional and absolute consent thereto, where is the reason for saying he did not mean it, but only meant to consent to its construction upon payment of the damages which he might sustain by reason of such construction and operation?

That is clearly in direct contradiction of the language used in the instrument here proved. If such had been the intention, it may be asked why it was not so stated. If not so stated, and in the absence of any evidence that such was the understanding of the parties and that there was a mutual mistake, it seems to me quite plain that effect must be given to the language which was actually used, and that such effect is to create a full and unconditional consent to the building and running of the road, without any claim for damages consequent therefrom.

It is urged that the provisions of the Constitution that no railroad can be built in the public streets without the consent of the owners of one-half in value of the property in the street, or in lieu thereof, the determination of three commissioners appointed by the General Term, after a hearing of all parties interested, and confirmed by the court, that the road might be built, has and should have a most material effect upon this written instrument. It is said that the consent is nothing but a kind of public act designed to give the necessary legality to the acts of the company in commencing to construct the road, and that it cannot be held to mean that the owner consents thereto without the right to claim the damage which he may prove as the result of the very acts to which he has consented.

I can see no sound foundation for any such construction. The provisions of the Constitution are a protection to the abutting landowner so far as they go. They are not absolutely a condition precedent to the construction of the road. If the requisite consents are not given, the company may have recourse to the alternative of a commission appointed by the General Term.

But, in giving the consent, the owner has no public function to perform. It is, as I have already said, an entirely private consideration for himself. Will I or will I not be benefited by the construction and operation of the road, is the only question that he is called upon to decide, and there is nothing in the nature of that question which calls for its decision on any but purely private and individual grounds. If he think he will on the whole be benefited, he will in all probability consent, and if he think the contrary, he will be quite as likely to refuse. If he consent and subsequently find that he has been mistaken as to the probable benefits, no cause or ground for the recovery of damages from the company arises as the result of his error. When, therefore, an abutting owner consents in writing to the construction and operation of an elevated railroad in the street fronting his property, what other possible meaning can be placed upon such act than

that he voluntarily abandons his easement of light, etc., in the
street to the extent to which it will necessarily be affected by
the building of the road? The act is capable of but one con-
struction as it seems to me. He might have consented con-
ditionally, as, for instance, that a majority should also execute
such consent, or upon payment of a certain sum, or upon con-
dition of the payment of such damages as he might prove he
would sustain from the existence of the road.

In this case, however, there is absolutely no condition stated
or claimed. There is the unconditional consent to the build-
ing of the road, and upon the assumption that it was signed by
all the owners or duly authorized by them, it must be regarded
as an abandonment *pro tanto* of the easement in that street
as already described, especially after the consent has been acted
upon by the company, with the possible limitation hereinafter
to be mentioned.

Perhaps the consenting party might withdraw his consent if
he had given it without any valuable consideration, and if the
other party had done nothing under it so that its position would
not be unfavorably affected by such withdrawal. This is not
such a case, because the company have proceeded to build
their road and they would be unfavorably affected by just
the amount they must pay if the consent be regarded as
withdrawn.

The case here shows that the consent in question was not
signed by all the owners of the land. The land was owned
by these persons as tenants in common, and they were also
partners in business. The evidence shows that the name of
the firm was signed to the consent by Mr. Brush, and the
stipulation of counsel was that in case of the failure to produce
certain exhibits used on the trial, upon the argument at General
Term or in this court, such failure, together with the other evi-
dence in the case, should be taken to establish the genuineness
of the signature of the firm upon the consent in question. The
exhibits were not produced, and the defendants' counsel claims
not only that the genuineness of the signature of the firm to
the paper is thus admitted, but he also claims that the proper

construction of the stipulation is that the partner who signed the firm name was authorized by the other members thereof so to do. I do not think so. The defendants were endeavoring to prove that the signature of the firm name to the paper was placed there by Mr. Brush, one of the partners, and witnesses were called who knew his handwriting and had seen him write the signature of the firm to other papers, to show by them that in their opinion he had written the signature in question. The exhibits in question were the books of different banks where the firm kept their accounts, in which the firm name had been written by each of the partners, and also their individual names, as aids to enable the bank officers thereafter to identify the firm signature when signed by the different members. All that the stipulation effected was to concede (in the absence of these exhibits) that the firm signature was genuine, that is, was placed there by one of the members of the firm (Mr. Brush), as defendants were endeavoring to prove. I can see no reason for giving a greater weight to the absence of these exhibits than could possibly be given to them and the other evidence by their presence. If present, all that could have been inferred therefrom was that the defendants upon the whole evidence had proved that Mr. Brush, one of the partners, had signed the firm name. We do not think that the defendants have proved that it was signed by the authority of the rest of the firm. It was not a firm matter in regard to which each partner would in his action represent himself and the rest of the firm, but actual authority would have to be shown or inferred from acts and circumstances in proof. In the absence of evidence of authority, or of circumstances from which an inference of authority might fairly be drawn, we think the owners of the land other than the one who signed it and his grantees with knowledge, or implied knowledge, would be wholly unaffected by the execution of this paper. We leave this question open for proof upon another trial as to authority.

It is also claimed that the actual occupation of this square by the defendants for their railroad is much greater and more

exclusive than any fair construction of the consent would permit. It is said to be unreasonable and excessive under cover of such a license to in fact completely cover the whole street and to render the latter much less valuable for purposes of light, etc., than could reasonably have been in the contemplation of the parties. Possibly this may be true. We do not now pass upon that question. The courts below, however, have denied all validity to the written consent and have not confined themselves to a refusal to give effect to it beyond a reasonable extent. We think the consent should have a reasonable construction and we ought not to hold that such a paper would authorize the building of a solid structure as high as the top of the buildings fronting on the street and completely covering the same from building to building. This would certainly be regarded by all as not within the contemplation of the parties to the paper. We will not now and in advance decide whether the use actually made of the street is or is not unreasonable with reference to this consent. Further evidence may be given upon another trial on this point, from which the question may be more readily determined.

We think the courts below, in refusing all possible effect to the consent in question as an abandonment to any extent of the owners' easement in the street, committed an error which requires a reversal of the judgment and a new trial.

All concur, except MAYNARD, J not voting.

Judgment reversed.