### ALLERTON v. STEELE.

(Supreme Court, Appellate Division, Third Department. March 8, 1901.)

1. ADVERSE POSSESSION—COMMENCEMENT—NATURE.

In 1863 plaintiff's grantor and defendant's grantor, having a dispute over the ownership of a piece of land, made an arrangement by which defendant's grantor yielded his claim to the land in question, and in consideration thereof plaintiff's grantor instructed defendant's grantor to fence in certain land of plaintiff's grantor. The fence was so built, and from that time was the boundary between the lands owned by them and by their several grantees. *Held*, that the entry of defendant's grantor on the lands so fenced in by him was adverse, and the possession of defendant and his grantor would ripen into title by lapse of time.

2. SAME—PERMISSIVE COMMENCEMENT.

In 1870 defendant's grantor, by permission of plaintiff's grantor, placed one corner of a barn he was building across his line on land owned by plaintiff's grantor, and from that time the barn remained where originally placed, and was used by defendant and his grantor. There was nothing afterwards to change the character of the possession so obtained. *Held*, that the entry on the land of plaintiff's grantor, covered by the corner of the barn, being permissive in its inception, could not be the basis of an adverse holding.

3. LAND OF ANOTHER—ERECTION OF BUILDING—LICENSE—REVOCATION.

Where a building is placed on land of another under a verbal license thereto from the landowner, such landowner is not estopped from revoking the license, and recovering the possession by ejectment.

Appeal from trial term, Clinton county.

Ejectment by Charlotte A. Allerton against Edgar W. Steele. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Lephe Allen was the common source of title to all the lands shown on the diagram, including the lands in question. She conveyed the lot marked "Parcel A, Church Lot," to the Baptist Church. She also conveyed to Franklin P. Allen the tract marked "Parcel B," lying to the west of the "Church Lot," and extending south to the north branch of the Chazy river, not shown on the diagram. She also conveyed to Franklin P. Allen the lot 198x78.4½, marked "Parcel D, Steele," also the lot marked "Parcel C," bounded west by

parcel B, north by parcel A, south by the river, and east by the west line of parcel D, extended south to the river, including also the gore running north between parcels A and D. She also conveyed to Rhoda A. Allen parcel E, which included the land bounded west by parcel C, and north by parcel D. By conveyances from Franklin P. Allen and Rhoda A. Allen, Edwin P. Francis obtained parcels B, C, and E. The pieces in controversy are the piece of irregular shape lying south of parcel D, and the small piece, nearly square, in parcel C, at the southeast corner of parcel A.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

C. J. Vert, for appellant.

S. L. Wheeler, for respondent.

PARKER, P. J. So far as the parcel in dispute which lies south of parcel D is concerned, it must be conceded, I think, that if F. P. Allen, in 1863, entered into the possession thereof with the intention of making it his own, and if E. P. Francis, the previous owner, at whose direction he then entered, knew that he so intended, and himself intended that Allen should thereafter so hold and own it, such an entry was sufficient to initiate an adverse user; and if thereafter, up to the present time, Allen and his grantees have used and occupied such strip of land, inclosed it with a fence, put a building thereon, and in all respects treated it as their own, such user has been adverse to Francis and his successors, and the defendant herein has acquired the title thereto by adverse user. Lewis v. Railroad Co., 162 N. Y. 220, 56 N. E. 540. The fact that Allen may not have asserted in public, in so many words, his claim of ownership, does not necessarily preclude him from claiming adverse possession. "The character of adverse possession is given, not by proving notice to persons interested, but by the nature of the acts done by the party." Railroad Co. v. Collins, 41 App. Div. 8, 11, 58 N. Y. Supp. 65, 67. The undisputed testimony of Allen shows that such was the nature of his entry and holding. At Francis' request, he abandoned the claim that his "gore" extended south across the ditch Francis was then building, and allowed Francis to place the fence across that gore so far north of the ditch as would permit of driving a team between it and the ditch.

In response to that abandonment of claim on his part, Francis told Allen to fence in the strip in question. This was done by Allen's extending, in a straight line easterly, the fence so located by Francis across the gore, until it intersected the east line of parcel D extended south; thus making the south line of the gore and parcel D, which were then both owned by Allen, a straight line. From that time Francis and his successors have claimed and occupied the land then appropriated by him, and Allen has occupied the strip which Francis told him to take. There is no suggestion in that arrangement that each should hold only so long as the other consented thereto; nothing to indicate that Allen was a mere licensee of the strip which he took. Francis got what he asked from Allen, and in consideration thereof gave to Allen the strip in question. Undoubtedly both understood that what each then took he was thereafter to own in his own right, and hence each then started upon a term of adverse holding, which has now ripened into a title. It may be that the south line of parcel D was never a disputed line between Allen and Francis, and that the rule regulating the practical location of boundary lines is not applicable to it, but the case shows a clear title by adverse user in the defendant, and the dismissal of the complaint as to that parcel was correct.

As to the small parcel eight feet by nine feet, upon which the corner of the defendant's barn is placed, a different case is presented. Allen built that barn in 1870. Concededly, that parcel then belonged to the heirs at law of Francis, and Allen obtained permission from them to set the corner of his barn over upon it. There is no pretense that any purchase was then made by him, nor any

agreement on their part to ever convey it to him. Indeed, nothing whatever was given by Allen as a consideration for the permission. From his evidence, the transaction was simply this:

"I think I spoke to the agent of the heirs of E. P. Francis before building the barn about getting permission to place that corner of the barn upon that parcel of land. (It was admitted that the agent had authority to speak.) The agent said that the matter was so small it would not amount to anything, and he had no objection to my building there."

Since then the barn has remained there, and been used by Allen and his grantees as their barn. There was evidently no disputed line here, which was located by the parties; concededly, Allen built over the line onto Francis' land.

Nor do I think that the entry which Allen then made was such as could be the basis of an adverse holding. The permission given him was a mere license to let his barn project over onto Francis' land. It did not purport to give him the land. Nothing in it suggested to Allen that he thereby acquired any right to hold it, except by reason of such permission. He understood that the permission which he then took was in entire subordination to Francis' title, and nothing has since occurred showing that he held, or claimed to hold, it in any other way. During all this time he has held it by the permission then given, and hence his holding has not been adverse so as to ripen into title. Cronkhite v. Cronkhite, 94 N. Y. 323; Wiseman v. Lucksinger, 84 N. Y. 31–44. Nor under such an arrangement could Allen hold the land upon the theory of an equitable estoppel. See White v. Railway Co., 139 N. Y. 19, 25, 34 N. E. 887; Crosdale v. Lanigan, 129 N. Y. 605, 29 N. E. 824. I conclude, therefore, that, so far as this parcel of land is concerned, the defendant has shown no title to the same, either by adverse user or by any other method. Francis' title thereto has passed to this plaintiff, and hence it was error, as to it, to dismiss the complaint.

For this reason, the judgment must be reversed.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur.