the law is that such a concern shall cease business if it fails to make good the deficiency. Had the directors of the Traders' Company done nothing more, their action would have been unexceptionable. According to the complaint, the directors decided to wind up, and not repair the impairment. The duty was cast upon them as directors in their fiduciary capacity to do this. They could not delegate the task, thereby escaping their responsibility to the state, to creditors and to nonassenting shareholders. It is not correct to say that no question as to creditors is involved in this case. The very statement rendered to the plaintiff shows the contrary. Merely a portion of the creditors—those covered by the reinsurance—have no cause for objection. Instead of performing their duty in the manner provided by law, the directors adopted an illegal method, with apparent ulterior motives. The company had sunk to a condition where the managers knew that the public policy of the state, as expressed in its statutes, commanded the arm of the law to fasten upon it. A consummated agreement with the plaintiff, the effect of which, however expressed, was to transfer to it all the substance of the body corporate, cannot be countenanced. It was incumbent on them to apply to the court for dissolution. That method, to effect the end in view was, under the circumstances, exclusive. The plaintiff was in pari delicto with them, and has no standing in this court for relief.

Demurrer sustained.

---

(35 Misc. Rep. 47.)

### SHAW v. MANHATTAN AVE. RY. CO. et al.

(Supreme Court, Special Term, New York County. May, 1901.)

1. ELEVATED ROAD—DAMAGES—CONSENT.
    Where construction of an elevated railroad in a street is consented to by abutting owner, he cannot thereafter recover damages by its operation.
2. SAME—RIGHT TO AWARD.
    A hotel being operated under a single management, fronting on an elevated railroad, with openings made in the walls to give access to other parts of the hotel, held, that damages could only be given for injury to the distinct buildings resulting from the operation of the railroad, but not for damages to the remaining part of the hotel, not fronting on the street on which the railroad was built.

Action by Julia A. Shaw against the Manhattan Avenue Railway Company and others. Judgment for plaintiff.

M. S. & I. S. Isaacs (Wm. G. Peckham, of counsel), for plaintiff.
Charles A. Gardiner, for defendants.

FITZGERALD, J. The complaint herein sets forth one cause of action. By stipulation, it was agreed to divide the action. The first cause of action, under the stipulation, is for damages to the property on the south side of Forty-Second street, commencing at a point 64 feet 1 inch east of Fourth avenue, and running easterly 66 feet. The second cause of action is for damages to the remaining portion of property described in the complaint. It was admitted

on the trial that, in 1875, James E. Shaw was the owner of the property described in the first cause of action. In October, 1875, said Shaw signed a paper, of which the following is a copy:

"We, the undersigned owners of land bounded on Forty-Second street (south side), between Lexington and Fourth avenues, hereby respectively consent to the construction and operation of an elevated railway over, through, and along said street; the said railway to be constructed and operated by either the New York Elevated Railway Company or the company to be organized under chapter 606 of the Laws of 1875.

"Dated, New York, October, 1875.

"Block number, 335; ward number, 67, 68, 68½; foot front, 25, 20, 21; valuation, $200,000.

"I am in favor of an elevated road over the middle of the street, but not on the walk.　　　　　　　　　　　　　　　　　"James E. Shaw."

The question of the consent of the owners of abutting property was passed upon by the court of appeals in Heimburg v. Railway Co., 162 N. Y. 352, 56 N. E. 899. It was held, O'Brien, J., writing the opinion (page 354, 162 N. Y., and page 900, 56 N. E.):

"If this paper is to be given the legal effect which it was intended to have, then it is very plain that the defendants have done nothing that the plaintiff did not consent to, and hence it cannot be said that there was any illegal invasion of the plaintiff's property rights. ＊ ＊ ＊ If the plaintiff did consent, then he has no cause of action, either at law or in equity. The plaintiff had no title to any part of the street in front of his property. He was a mere abutter, and his written consent that the railway might be constructed and operated in front of his property is a complete answer to a suit in equity in his behalf, or in behalf of his grantee to restrain the operation of the road; and so this court has held, even where the party bringing the suit owned the fee of the street when the consent was given. Herzog v. Railroad Co., 76 Hun, 486, 27 N. Y. Supp. 1034, affirmed in 151 N. Y. 665, 46 N. E. 1148, on opinion below; White v. Railway Co., 139 N. Y. 19, 34 N. Y. Supp. 887."

Upon the authority of this case, I must hold that the plaintiff herein is precluded from a recovery as to the property covered by the consent, and the first cause of action is therefore dismissed, with costs.

The second cause of action is for damages to the remaining portion of the property on which the Grand Union Hotel stands, and this comprises the land on Forty-First street, the Fourth avenue front, and a frontage on Forty-Second street of 64 feet. Included in the second cause of action is the property known as the "Westchester Hotel," which was conveyed to the plaintiff by John Garvey and wife by deed dated and recorded July 1, 1880. This property consists of three lots, with a building thereon, and has a frontage of 64 feet on Forty-Second street, and 75 feet 3 inches on Fourth avenue. Mr. Simeon Ford, a son-in-law of the plaintiff, and a member of the firm of Ford & Shaw (which consists of Simeon Ford, Samuel T. Shaw, and Mrs. Julia A. Shaw), who conduct the Grand Union Hotel, testified in reference to the Westchester Hotel property as follows:

"Q. Do you consider the hotel divided into two parts, one on the corner of Fourth avenue and 42d street, about sixty-four feet on 42d street by half the block on Fourth avenue, and the other part the rest of the edifice? A. The corner of 42d street and Park avenue running some seventy-five feet on Park avenue and sixty-three or sixty-four on 42d street, is a distinct building, put up separate from the rest, with original walls standing, perforated to give access to such other portions of the hotel."

This being a separate and distinct building, the remaining portion of the property embraced in the second cause of action must be eliminated from consideration, under the principle stated in Keene v. Railway Co., 79 Hun, 452, 29 N. Y. Supp. 971:

"In the award made in this action damages were allowed for alleged injuries to the apartments which had no frontage on Ninth avenue as well as to the two which had such frontage, and the question presented upon this appeal is whether such an allowance can be justified. It seems to us that it cannot. The three apartments which fronted on Fifty-Seventh street had no easements of light, air, and access upon Ninth avenue. While damages have been allowed where premises are so situated that they are to be considered as a single parcel, although the total frontage might not be upon the street occupied by the elevated railway, yet where such premises are improved by buildings distinct within themselves, some of them having no frontage upon the avenue occupied by the railroad, it is difficult to see upon what theory an award for the destruction of easements upon the avenue upon which such buildings have no frontage can be predicated. * * * It has been urged that because of the fact of there being unity of construction in the building and unity of ownership a different rule should obtain. But it is apparent that, notwithstanding the unity of construction and unity of ownership, these premises are occupied as distinct and separate buildings, just as much as though there was no architectural unity and there was a division of ownership. It is difficult to see how mere architectural unity or single ownership can give an easement upon a street where none would exist even if the occupation was the same and the interior arrangements were the same, but the exterior appearance showed diversity."

I find that the plaintiff is entitled to $25,000 for damages to the fee of the property hereinbefore described as the Westchester Hotel, and $1,500 per year for rental damage. Ordered accordingly.