PATTERSON and LAUGHLIN, JJ., concurred; VAN BRUNT, P. J., and HATCH, J., dissented.

Order reversed, with ten dollars costs and disbursements, and assessment vacated, with costs.

---

SAMUEL T. SHAW and Others, as Executors of and Trustees under the Last Will and Testament of JULIA A. SHAW, Deceased, and Others, Appellants and Respondents, v. THE NEW YORK ELEVATED RAILROAD COMPANY and THE MANHATTAN RAILWAY COMPANY, Respondents and Appellants.

*Consent by an abutting owner to the construction of an elevated railroad — what is merely an indication of a willingness to sign one — when a bona fide purchaser takes a title free therefrom — effect of a consent duly given.*

Upon the trial of an action brought to restrain the maintenance and operation of the elevated railroad in front of the plaintiff's premises upon Forty-second street, in the city of New York, it appeared that in 1875 the elevated railroad company presented to the owners of the property abutting upon that street the following blank consent: " We, the undersigned, owners of land bounded on

Forty-second St. (south side), between Lexington & Fourth avenues, hereby respectively consent to the construction and operation of an Elevated Railway over, through and along said street," and that in the column headed " signatures " was the following statement: " I am in favour of an elevated road over the middle of the street, but not on the walk," which was signed by the plaintiff's grantor. The railroad company, having failed to obtain the consents of the majority of the property owners to the construction of the road, applied to the court for the appointment of commissioners to determine whether the road should be built. It stated in its petition that the plaintiff's grantor had either not consented to the construction of the road or that no request had been made to him for such consent. It further appeared that when the plaintiff acquired title to the property the railroad had not been constructed; that the alleged consent of her grantor was not recorded, and that the plaintiff had no notice, so far as was disclosed, of the existence of such consent.

*Held*, that it was error to dismiss the plaintiff's complaint;

That the statement signed by the plaintiff's grantor was not an absolute consent to the construction of the road, but was merely an indication of his willingness to consent to a restricted right to build the road, if his consent to such restricted right was sought;

That, upon the recording of the deed to the plaintiff, before the railroad was in possession of any part of the street, the plaintiff took the property free from any consent or incumbrance imposed upon the property by her grantor.

The effect of a consent, when duly given, considered.

CROSS-APPEALS by the plaintiffs, Samuel T. Shaw and others, as executors of and trustees under the last will and testament of Julia A. Shaw, deceased, and others, and by the defendants, The New York Elevated Railroad Company and another, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 10th day of June, 1901, upon the decision of the court rendered after a trial at the New York Special Term.

The plaintiffs' appeal is taken from so much of the judgment as dismisses the first cause of action, while the defendants' appeal is taken from all of the judgment, with the exception of that portion thereof which dismisses the first cause of action contained in the complaint.

*William G. Peckham*, for the plaintiffs.

*Austen G. Fox*, for the defendants.

INGRAHAM, J. :

The action was brought to restrain the maintenance and operation of the elevated railroad opposite certain property which belonged to the plaintiffs' testatrix situated on the southeast corner

of Fourth avenue and Forty-second street, New York city. The property includes the whole frontage on Fourth avenue, between Forty-first and Forty-second streets, with a depth of 130 feet on both streets. The action was originally commenced by Julia A. Shaw, who died after the commencement of the action, and her executors were substituted in her place. The plaintiffs' testatrix acquired this property by various conveyances. It is now used, however, as one building for a hotel, and the complaint originally described the whole property as belonging to the plaintiffs' testatrix, and asked the court to enjoin the maintenance and operation of the elevated railroad on Forty-second street, upon which the property as a whole abutted.

Although there was but one cause of action alleged in the complaint, by a stipulation between the parties, the case was tried upon the theory that there were two causes of action; one, based upon the ownership of a piece of property on Forty-second street, commencing about sixty-four feet east of Fourth avenue and extending on Forty-second street sixty-six feet; and the other, based upon the ownership of the property on the corner of Fourth avenue and Forty-second street, about sixty-four feet on Forty-second street. The first cause of action was dismissed, and the court awarded judgment restraining the defendants from operating their road in front of the corner property, except upon payment of the sum of $25,000 as the value of the easement appropriated by the defendants, with an award for rental damages. The plaintiffs appeal from the dismissal of the first cause of action, the defendants from the award made upon the second cause of action.

The plaintiffs' testatrix acquired title to this property by separate conveyances. She purchased the southeast corner of Forty-second street and Fourth avenue (for which she has recovered judgment) in July, 1880. Her grantors had acquired title to the property in 1873. This property had a frontage upon Fourth avenue of about seventy-five feet with a depth on Forty-second street of about sixty-four feet. Upon this piece of property there was erected prior to the construction of the elevated railroad a hotel building which was known as the "Westchester House," and which at sometime seems to have been conducted as an independent hotel. Upon the remainder of this property there was erected a hotel called "The

Grand Union Hotel." This property was acquired by the plaintiffs' testatrix on September 13, 1877, by a conveyance from one Hayes. It was admitted by the parties, however, that in the year 1875 James Shaw was the owner of the property fronting on Forty-second street; that the construction of the elevated railroad was commenced in Forty-second street in August, 1878, and that Forty-second street in front of the premises in suit was opened under the act of 1813. In relation to what is known as the first cause of action, the land affected by which was acquired by the plaintiffs' testatrix in the year 1877 and was owned by James Shaw in the year 1875, and as to which the complaint was dismissed, there was introduced in evidence an instrument which the defendants claimed was a consent to the construction and operation of this road in front of this property, and the question upon the plaintiffs' appeal was whether the plaintiffs were estopped by that consent from maintaining this action. This instrument was as follows:

" We, the undersigned, owners of land bounded on Forty-second St. (south side) between Lexington & Fourth avenues hereby respectively consent to the construction and operation of an Elevated Railway, over, through and along said street. The said railway to be constructed and operated by either the New York Elevated Railroad Company or the Company to be organized under Chapter 606 of the Laws of 1875.

" Dated, NEW YORK, *October* —, 1875."

To this instrument was annexed a list of the owners of property, describing them by block and ward numbers, with the names of the owners and the valuation of the property. At the bottom of this list, opposite numbers 67, 68 and 68½, was the name of James E. Shaw as the owner, and there was written under the column headed "signatures" and opposite to this property the following: " I am in favour of an elevated road over the middle of the street, but not on the walk. James E. Shaw." The court below held that by this instrument Shaw consented to the erection and maintenance of the railroad and the plaintiffs were thereby estopped from maintaining this action to restrain the elevated railroad from operating its road in front of this property; and it is the correctness of this decision which is challenged by the plaintiffs upon their appeal.

294 SHAW *v.* NEW YORK ELEVATED R. R. CO.

The question as to the effect of this consent, if it had been signed in the form in which it was presented for signature, was presented to the Court of Appeals in the case of *White* v. *Manhattan Railway Co.* (139 N. Y. 19). The former part of the consent in that case was the same as in this, and there the owner of the property signed the consent. It had in that case been held in the court below that this consent, being obtained to comply with the provisions of the Constitution and law which required the owners of property abutting on a street to consent to the construction and operation of a railroad before the same could be constructed and operated, did not have the effect of divesting the abutting owners of their easement of light, air and access in the street; and that view was disapproved by the Court of Appeals. Judge PECKHAM, after discussing the nature of the easement that an abutting owner has in the streets, says: " Whatever the means by which the easements were created they are in their nature the same as if they had been created by grant. The owners thereof cannot be divested of them without their consent unless they are compensated therefor. Although it may generally be said, under the authority of the cases already cited, that an easement in the nature of an interest in the land of another can only be created by a grant, yet after it has been created and while it is in existence, it may be abandoned and thus extinguished by acts showing an intention to abandon and extinguish the same. * * * They had an easement in it only, and their consent purported to carry no title to land. There can be no question that they had the right to release, abandon or otherwise extinguish that easement, and upon such terms as they should think fit. The question before us is, whether they have done so and to what extent by the execution of the paper proved upon the trial; " and it was held that the unrestricted execution of this instrument was such an extinguishment of their easement. Upon that question the court say : " When, therefore, an abutting owner consents in writing to the construction and operation of an elevated railroad in the street fronting his property, what other possible meaning can be placed upon such act than that he voluntarily abandons his easement of light, etc., in the street to the extent to which it will necessarily be affected by the building of the road ? The act is capable of but one construction as it seems to me. He might have

consented conditionally, as, for instance, that a majority should also execute such consent, or upon payment of a certain sum, or upon condition of the payment of such damages as he might prove he would sustain from the existence of the road.   In this case, however, there is absolutely no condition stated or claimed.   There is the unconditional consent to the building of the road, and upon the assumption that it was signed by all the owners or duly authorized by them, it must be regarded as an abandonment *pro tanto* of the easement in that street as already described, especially after the consent has been acted upon by the company, with the possible limitation hereinafter to be mentioned.   Perhaps the consenting party might withdraw his consent if he had given it without any valuable consideration, and if the other party had done nothing under it so that its position would not be unfavorably affected by such withdrawal. This is not such a case, because the company have proceeded to build their road and they would be unfavorably affected by just the amount they must pay if the consent be regarded as withdrawn." The validity of such consent, it will be seen, was placed upon the voluntary abandonment by an owner of his easement so far as the same would be affected by the construction of the road, and, although voluntary and without consideration, which would entitle the owner to withdraw it, it becomes binding when the railroad has acted upon it and constructed the road.

Although this case has been followed in several cases to which attention will be called, it is the only case which has discussed the principle upon which such a consent will be deemed to be a relinquishment by the owner of abutting property to his right in the street. And to give this consent this effect it must appear to be, it seems to me, what the consent in the *White* case was, a consent that the road as proposed be built ; and to prevent a person giving such consent from withdrawing it, it must appear that the road has acted upon the faith of it in constructing its road.   This consent, as presented to Shaw for signature, was a consent to the construction and operation of an elevated railroad over, through and along Forty-second street. There is here no distinction between the sidewalk and the roadway of the street, and undoubtedly such a consent would authorize the construction of the railroad upon the sidewalk as well as in the middle of the street.   Was this consent signed by Shaw?   Did he,

by what he put upon that paper, consent to the erection and opera-
tion of an elevated railroad over, through and along said street?
None of the other property owners had signed this instrument.
When or under what circumstances it was presented to Shaw for
signature does not appear. We simply have the paper, which in
form was a consent to construct this road over, through and along
this street, upon which Shaw had written these words: "I am in
favour of an elevated road over the middle of the street, but not on
the walk. James E. Shaw." Was this signing the consent, or, by
the execution of this statement of his views, did he indicate an
intention to consent that the road should occupy the whole of the
roadway with the structure? Whether this signature was or was
not such a consent must be determined by the intention of the par-
ties to it and the intention of Shaw when he signed it.

Upon that question we have evidence of the acts of the railroad
company. The railroad company having failed to acquire the con-
sent to the construction of the road of a majority of the property
owners, made an application to the General Term of the Supreme
Court for the appointment of commissioners to determine whether
or not the road should be built, notwithstanding the objection of
the property owners. They were required to base that application
upon evidence that the property owners had refused their consent,
and the railroad company presented to the General Term of the
Supreme Court a petition verified by the president of the company,
which stated that an application had been made to the owners of
the property bounded on the portions of the streets and avenues
through which the road was to run, for their consent to the con-
struction and operation thereof, over, through and along the route
so designated; "and the consent of such owners to the extent of
one-half in value of such property cannot be obtained, neither of
the owners of property bounded on the whole line aforesaid, nor of
such owners of the property bounded on any one of said streets,
and such consent was refused by the owners of more than one-half
in value of the property bounded on each of said streets, and
portions of streets, as appears by the proofs hereto annexed."
Annexed to that petition was an affidavit of one Taylor, who swore
that he had made diligent inquiries of the persons in possession, and
claiming to own the several lots or parcels of land on both sides of

Third avenue, between the Bowery and Forty-second street, and on both sides of Forty-second street, between Third and Madison avenues; and that the Schedule A annexed to the affidavit includes and accurately states all the property on said portion of Third avenue and on said portion of Forty-second street; that "I requested each of the owners of said lots and property on said portion of Third avenue, opposite to whose names is written in said Schedule 'A' annexed hereto, the words 'consented' or 'declined' to consent' to sign a certain paper of which a copy is hereto annexed, marked Schedule 'B,' and to consent to the construction and operation of an elevated railway over, through and along said avenue, and each of the owners of said lots and property on said portion of said Forty-second street, opposite to whose names is written in said Schedule 'A' hereto annexed the words 'consented' or 'declined to consent' to sign a certain paper of which a copy is hereto annexed marked 'C,' and to consent to the construction and operation of an elevated railway over, through and along said street. * * * Each of such owners and persons, excepting those opposite to whose names in Schedule 'A' is written the word 'consented' refused to consent to the construction or operation of said railway or to sign said paper so presented." Annexed to this affidavit is a schedule which contains a proposed consent in the same form as that to which is affixed Shaw's name to which attention has been called. In that schedule Shaw is put down as the owner of lots 67, 68 and 69, block 335, but there is no indication that Shaw had consented to the construction of the road; and it is upon this petition and affidavit that the court acted in appointing commissioners under whose authority the road was subsequently built.

We have, therefore, the fact that, although a consent to the construction of the road was presented to Shaw, upon which he indicated that he was in favor of the construction of a road over the roadway or middle of the street, the defendants, when they made their application for the appointment of commissioners, stated to the court that Shaw had either not consented to the construction of the road, or that no request had been made to him for such consent. This would seem to show that neither Shaw nor Taylor, who was engaged in getting consents for the construction of this road in Forty-second street, understood that Shaw consented to the con-

struction of the road as requested. The paper itself is certainly ambiguous. The consent is not signed. Shaw had annexed to it a statement of what he favored, but I do not think that such a statement could be considered a consent to the construction and operation of the road, especially where it appears that the writing was not acted upon as a consent, or that the defendants had considered that the owner of the property had consented thereto. The effect of the indorsement of Shaw was an indication of his willingness to consent to a restricted right to build the road if his consent for such a restricted right was asked for. There is not in this, as there was in the *White* case, a consent in writing to the construction and operation of an elevated railroad in the street fronting his property. There is no formal consent to do what the road wanted to do; and what Shaw signed did not purport to be such a consent, but only purported to be an expression of what he favored; and the utmost that could be claimed for it, it seems to me, is an expression of willingness to sign a consent much more restricted than they then asked for if such a consent was presented to him for signature. And we have further in this case the evidence that the railroad company never acted upon this consent and never built its road relying in any sense upon it. In this case, when the plaintiffs' testatrix acquired the title to this property, there was no railroad in this street. This instrument, claimed to have been signed by Shaw, was not recorded and plaintiffs' testatrix had no notice, so far as appears, that Shaw had ever signed any instrument affecting her easements in the street. The railroad was not in possession of any part of the street, and upon the record of the deed to her under the Recording Act she took the property free from any consent or incumbrance imposed upon the property by Shaw.

The *White* case has been followed by several other cases in the Court of Appeals to which it is proper to call attention. In *Foote* v. *Elevated Railroad* (147 N. Y. 367) the abandonment of the easement claimed by the plaintiff was claimed to have been effected as the result of certain agreements entered into between the railroad company and a prior owner of the land. The court, in discussing the *White* case, stated: "The peculiar features in the *White* and *Snell** cases, which have been referred to, were, in the

* *Snell* v. *Levitt* (110 N. Y. 595).

one, an express authorization to build the elevated railroad, and, in the other, an express relinquishment of an easement to conduct water, upon both of which agreements the parties favorably affected thereby had acted;" and after describing the agreements under which it was sought to effect such an abandonment in the case then under consideration, it was held that nothing there could effect such an abandonment. What was said by the court in that case is, I think, quite applicable to the case at bar. "I think the plaintiff was under no obligation to look beyond the records for anything affecting his title to the land he was about to purchase. As matter of fact, the defendants were trespassers, with no right as yet to occupy the easements of the abutting owner. The argument that Lathrop's demand in the action, however irrevocable, was equivalent to an election to abandon the easements does not commend itself. At most, it could be regarded as amounting to a conditional declaration of an intention to abandon. That would be insufficient, * * * and it cannot be said that the defendants had seasonably acted upon it. Moreover, the importance of discovering from the circumstances the intention of the person who is claimed to have abandoned his rights is in its explaining and determining the significance of the act."

In *Ward* v. *Metropolitan Elevated R. Co.* (152 N. Y. 39) it appeared that the plaintiff's grantor, in consideration of $3,300 paid to her by the defendants, released to them the easements or rights belonging to the premises which had been taken and were affected by the maintenance and operation of their road, and all causes of action therefor, past and future, and consented to a perpetual maintenance and operation of such road in front of the premises. It was held that this instrument was sufficient within the *White* case, based upon a valuable consideration, to convey the easement in the street; and although this instrument was not recorded, as the railroad was in actual possession of the easements, that possession was notice to all persons purchasing the abutting property as to the rights that the railroad actually had. But as the railroad was not in actual possession of this street when the plaintiffs' testatrix acquired her title, this does not apply.

In *Heimburg* v. *Manhattan Ry. Co.* (162 N. Y. 352) it is stated in the opinion that it was admitted that in October, 1875, the plain-

tiff executed and delivered an instrument, appearing in the record, which in terms expressed his consent to the construction and operation of the railroad in front of the premises which were involved in this action. In that case it appeared that the plaintiff had inserted in the paper before his signature these words: "If the road must be on 3d Avenue, I prefer the middle," and it was held that if that was to be treated as a condition, which is the most favorable view for the plaintiff, then it was undisputed that it was complied with by the company in the construction of the road.

In *Herzog* v. *N. Y. Elevated R. R. Co.* (76 Hun, 486; affd. on opinion below, 151 N. Y. 665) it appeared that when the road was built, and prior thereto, the premises in question were owned by the mayor, aldermen and commonalty of the city of New York, and subsequently were conveyed to the plaintiff's grantor; that prior to such conveyance the defendant had erected its road along Third avenue in front of the premises which were subsequently conveyed to the plaintiff; that the consent in writing of the corporation of the city of New York was duly given to the construction of said road, and at the time of the conveyance by the city of New York the defendants were operating the road. The presiding justice, in delivering the opinion of the court, said: "In other words, that the corporation of the city of New York, being the owner of the premises now claimed by the plaintiff, and also of the fee of the street (impressed, it is true, with a public use), when it consented to the construction of this railway upon said street, it parted with all claim to compensation for the use of easements in said street by the railroad company, which affected its property abutting thereon."

These are the only cases in which such a consent has been presented to which our attention has been called, and in all there appeared, what does not appear here, that the owners of the property did actually consent to the construction and operation of the road, and upon that consent the road acted, and was in actual occupation of the street when the plaintiff acquired title. In this case, as I have before pointed out, the proof fails to show that Shaw did actually sign the consent, but what he did write was a mere indication of what he would be willing to consent to if an application for such consent was made, with the further proof that the instrument was never treated by the company as a consent, but, on the contrary,

when the application was made to the court for the appointment of commissioners, it was made under such circumstances as to justify the inference that Shaw, with the other property owners upon this street, had not consented.

I think, therefore, that the action of the learned judge in dismissing this complaint as to the first cause of action, and holding that this instrument was sufficient evidence of an intention to abandon this easement and to estop the plaintiffs' testatrix, a subsequent grantee of the property, from enforcing her right in the street, cannot be sustained, and for that reason the judgment should be reversed.

Upon the second cause of action there are questions presented which are not free from doubt, but as we think this property should be treated as a whole, and the amount of damage sustained in consequence of the erection of this road upon this street should be considered as applying to the whole frontage of the street, the proper course in this case is to order a new trial of the whole action without discussing the other question presented.

The judgment appealed from is, therefore, reversed and a new trial ordered, with costs to the plaintiffs to abide the event.

VAN BRUNT, P. J., PATTERSON, HATCH and LAUGHLIN, JJ., concurred.

Judgment reversed, new trial ordered, costs to plaintiffs to abide event.