JOSEPHINE L. MAYBECK, Plaintiff, *v.* NEW YORK MUNICIPAL RAILWAY CORPORATION and NEW YORK CONSOLIDATED RAILROAD COMPANY, Defendants.

(Supreme Court, Kings Special Term, August, 1918.)

Consent — by owner of real property to construction of elevated railroad in front of premises is a "conveyance" and must be recorded in order to bind subsequent purchasers — injunctions — title — statutes — pleading — Real Property Law, § 290 — Code Civ. Pro. § 522.

A consent executed by an owner of real property to the construction, maintenance and operation of an elevated railroad in front of her premises is a "conveyance" within the meaning of section 290 of the Real Property Law and must be recorded in order to bind subsequent *bona fide* purchasers of the property.

The plaintiff in an action to enjoin the maintenance and operation of defendant's railroad in front of her premises is not bound by a consent to such railroad executed by her predecessor in title but not recorded until her deed was recorded, she having paid a valuable consideration for the premises and having no knowledge of such consent until long after she had acquired title.

At the time plaintiff acquired title to her property there was on file in the proper county clerk's office a certificate issued by the public service commission to the defendant containing a

description of the route of the proposed railroad and providing, among other things, for the obtaining of the consents of the owners of one-half in value of the property bounded on the streets through which the railroad was to be constructed. *Held*, that in the absence of a statute making said certificate constructive notice of its contents it was insufficient to put plaintiff on inquiry as to whether her grantor had given such consent.

The fact of such consent was purely a matter of defense, and allegations of the complaint anticipating such a defense, not being inconsistent with plaintiff's claim on the trial that she was not bound by the consent because of the failure to record it nor with the evidence given in support of such claim, may be treated as surplusage.

The consent having been pleaded as a part of the affirmative defense, the allegations thereof, no reply having been required, are deemed controverted under section 522 of the Code of Civil Procedure, and any evidence to show that the consent was not binding on plaintiff was available to her.

While the allegations of the complaint, plaintiff's conduct on the trial and her attempt to secure the revocation of the consent by signing a revocation and by procuring one from her grantor might be admissions that the consent was given, they did not, in the absence of facts constituting an estoppel, admit its validity or legal effect.

An attempt to revoke an act cannot be regarded as an admission of its validity or binding effect.

ACTION for an injunction.

Stern & Gilleaudeau (Arthur J. Stern, of counsel), for plaintiff.

George D. Yeomans (Charles L. Woody and Trabue Carswell, of counsel), for defendants.

BENEDICT, J.   This is an action to enjoin the defendants from maintaining and operating an elevated railroad in Jamaica avenue, in the borough of Queens, in front of the premises of the plaintiff, or in the alternative for the damages sustained by the plaintiff by reason of the construction and operation of such railroad.

The principal ground of defense is that one Sophia C. E. Isler, who was plaintiff's predecessor in the title, had, prior to the conveyance to plaintiff, executed a consent to the construction, maintenance and operation of the road, thereby waiving, as defendants urge, any claim for damages by reason of the invasion by defendants of the easements of light, air and access appurtenant to plaintiff's premises. *White* v. *Manhattan R. Co.,* 139 N. Y. 19.

This consent was acknowledged September 22, 1913, and was recorded in the Queens county clerk's office on September 1, 1914. Plaintiff acquired title to the premises in question between the two dates last mentioned by deed from said Sophia C. E. Isler, dated January 27, 1914, and recorded on the same day in the Queens county clerk's office. It was shown by uncontradicted testimony that plaintiff paid a valuable consideration for the premises and that she did not know of the giving of the consent aforesaid until long after she had acquired title. The construction work of defendants in front of plaintiff's premises did not begin until June, 1915, and work was not begun on the Jamaica avenue extension until January, 1915, about a year after plaintiff acquired her title.

The principal question in the case is, therefore, whether plaintiff is bound by this consent, in view of the fact that it was not recorded until after her deed was recorded, and that she was a purchaser for value and without notice of the consent.

I have not been referred to, nor have I been able to find, any statutory provision specially requiring or providing for the recording of the consents of property owners in the case of an elevated railroad, such as exists in the case of street surface railroads. Railroad Law, § 171. We are, therefore, thrown back upon the general statutory provisions relative to the recording

of instruments affecting the title to real property
(Real Prop. Law, art. 9) in the attempt to determine
whether such a consent as is here under consideration
must be recorded in order to bind a subsequent *bona
fide* transferee of the abutting property. In section
290 of the Real Property Law the term " conveyance "
is defined as " every written instrument, by which any
estate or interest in real property is created, trans-
ferred, mortgaged or assigned, or by which the title to
any real property may be affected," including and
excepting certain instruments not here involved. If,
as has been held by the Court of Appeals, such a con-
sent constitutes an abandonment to a certain extent of
the easements of light, air and access (*White* v. *Man-
hattan R. Co., supra; Heimberg* v. *Manhattan R. Co.,*
162 N. Y. 352), it would seem very clearly to be an
instrument by which the title to real property may be
affected, and hence to be a statutory conveyance which
is required to be recorded. Upon the authorities the
question does not seem to have been fully determined.
In *Ward* v. *Metropolitan El. R. Co.,* 152 N. Y. 39, the
Court of Appeals expressly refrained from decid-
ing it, holding that " as the defendants [when plaintiff
acquired title] were in open, visible and notorious
possession of all the rights acquired by or released to
them and their possession was inconsistent with the
title in plaintiff's grantor to a full right to the ease-
ments of light, air and access afforded by the street,
it operated as a notice to the plaintiff of the defend-
ants' rights therein." In the subsequent case of *Shaw*
v. *New York El. R. R. Co.,* 187 N. Y. 186, where the
plaintiff had acquired the property without notice of
an unrecorded consent, and there was at that time no
occupation of the street by the defendants, it was held
that the plaintiff " took her title unaffected and unim-
paired by the act of her husband independent of any

other consideration.'' There were other grounds upon which the court held that the consent did not constitute a defense to the action, to which other grounds the words '' independent of any other consideration '' were evidently intended to refer. So that it may be urged that the point here at issue was not finally decided by the Court of Appeals. However that may be, I think the decision was right. See, also *Adee* v. *Nassau Electric R. R. Co.,* 65 App. Div. 529, 538; affd., 173 N. Y. 580.

I hold, therefore, that the consent here in question was a '' conveyance '' within the meaning of section 290 of the Real Property Law, and, therefore, an instrument necessary to be recorded in order to bind subsequent *bona fide* purchasers.

Defendants urge that the plaintiff was not a *bona fide* purchaser, because, although there was no actual occupation of the street in front of her premises by any construction work until long after she acquired title to her property, yet there was at that time a certificate issued by the public service commission to the defendant New York Municipal Railway Corporation, which was on file in the Queens county clerk's office, as required by the Rapid Transit Act of 1891 (Laws of 1891, chap. 4, § 24, subd. 3), which certificate contained a description of the route of the proposed elevated railroad and provided, among other things, for the obtaining of the consents of the owners of one-half in value of the property bounded on the streets through which the railroad was to be constructed. This, it is claimed, was sufficient to put the plaintiff on inquiry as to whether her grantor had given a consent. I cannot accede to this contention. Plaintiff, before she purchased, had the title to the premises examined by one of the leading title insurance corporations, and nothing appeared on the report to advise her in any

way of the existence of such certificate. Our records
are so indexed that it is practicable to search only
against prior owners of record of the property to be
acquired, and the Court of Appeals has held that such
a search is all that is required. Thus in *Tarbell* v.
*West,* 86 N. Y. 280, where the record title to partner-
ship property stood in the name of one member of the
firm, it was held that the recording of a mortgage given
by another member of the firm of his interest was not
notice to a *bona fide* purchaser from the holder of the
record title, the court saying that the doctrine that the
record of a conveyance is notice to subsequent pur-
chasers " is subject to the limitation, that it is notice
only, to those claiming under the same grantor, or
through one who is the common source of title." And
this construction has since been incorporated in the
statute by amendment. Real Property Law, § 291;
*Hatcher* v. *Brunt,* 89 Misc. Rep. 530. It should be noted
in passing that the consents of only the owners of one-
half in value of the abutting real property were
required, so that, for all the plaintiff knew, the certifi-
cate might have been fully complied with in this respect
without the consent of plaintiff's grantor. I have not
been referred to any provision of statute making the
certificate, when filed, constructive notice of its con-
tents, and in the absence of such a statute it is not
notice. *Dunn* v. *City of New York,* 205 N. Y. 342, 353.

It is also urged that plaintiff is not in a position to
assert in this action that she is not bound by the con-
sent on account of the failure to record it until after
she acquired title, because her complaint is not framed
on that theory, but upon the theory that a valid consent
was given and subsequently revoked. The answer to
this is that there was no occasion to say anything at
all about the consent in the complaint. No relief is
asked with respect thereto, as that it be set aside or

declared void. The consent was purely matter of defense, and the allegations of paragraphs 12 to 15, inclusive, of the complaint, which appear to have been inserted in anticipation of such defense, may be treated as surplusage. These allegations of the complaint are in no way inconsistent with the claim now made by plaintiff that she was not bound by the consent because of the failure to record it, nor with the evidence given in support of such claim. The consent is set up in the answer as part of the affirmative defense, the allegations of which, no reply having been required, are deemed controverted by traverse or avoidance, as the case requires. Code Civ. Pro. § 522. Hence any evidence to show that the consent was not binding on the plaintiff was available to her. After the case was closed, it was reopened and both parties were afforded an opportunity, on ample notice, to offer any evidence on this question which they might desire. The proceedings upon such hearing are as much a part of the trial as if the question had been raised and the evidence concerning the same had been given before the case was originally closed. Defendants did not claim surprise nor request any adjournment.

Defendants also urge that plaintiff has admitted the validity of the consent, both by the allegations of her complaint, by her conduct on the trial, and by her attempt to secure the revocation thereof, both by signing a revocation herself and by procuring a revocation from her grantor. These acts may admit the fact of the giving of the consent, but they do not, in the absence of facts constituting an estoppel, admit its validity or legal effect. The attempt to revoke an act cannot be regarded as an admission of its validity or binding effect, since one may very properly seek to revoke an act as to the validity of which he is in doubt.

The conclusion thus reached, that the consent is not

binding on the plaintiff, renders it unnecessary to consider the other questions of law raised on the trial, and it remains only to determine the amount of the plaintiff's damages.

I have not had the benefit of a view to aid me in fixing the damages, because the counsel for the defendant have refused to consent that I should view the premises. I have therefore determined the question of damages on the evidence. I find a fee damage of $1,200, and a loss of rents from the date of the reconveyance of the premises to the plaintiff up to the date of the trial of $80.

Judgment accordingly.